ADOLPHUS MILLER

v.

C. D. COOK et al.

190:16 LRA813

*Filed at Mt. Vernon November 5, 1890.*

135 190
146 127
135 190
175 555
135 190
86a 173
86a 653
87a 69

135 190
186 ¹589
186 ¹⁶611
135 190
194 ¹¹ 36

135 190
201 ¹¹343
d103a¹¹430
135 190
205 ¹¹139
106a¹⁸223
135 190
210 470

1. SETTING ASIDE SALE FOR TAXES—*at whose instance—rights of mortgagee—estoppel as to the owner or his mortgagee.* The right to bring suit, in equity, for the purpose of setting aside a tax sale and having the deed declared void, is not confined to the original owner of the land, but may be exercised by his mortgagee, or by any person who can show such an interest in the estate as would have entitled him to redeem.

2. In case a part of mortgaged premises has been sold for taxes, a portion of which was paid by the mortgagee and another part was illegal, and the other property embraced in the mortgage affords but a scant or doubtful security, the mortgagee may maintain a bill to have the sale for taxes set aside as a cloud upon his security.

3. Where the owner of property files his bill to set aside a tax sale of a lot as a cloud on his title, and his bill is dismissed on the merits, he, and those claiming rights derived from him subsequently, will be estopped by the decree of dismissal from questioning either the sale or the certificate of purchase, or any deed that might be issued thereon. But his mortgagee, whose interest accrued prior to the tax judgment and sale, is not estopped.

4. A simple estoppel, however, can not be held to have the effect of a conveyance. So a party who is estopped from questioning the validity of a tax sale by a decree dismissing his bill to set the same aside, is not thereby divested of his title, and the estoppel will not transfer such title to the holder of the tax title.

5. Although a mortgagor of land may be estopped from questioning the validity of its sale for taxes as against the holder of the certificate of purchase, such estoppel will not put such holder into the shoes of the mortgagor, and make him the owner of the equity of redemption under the mortgage.

6. SAME—*mortgagee and tax purchaser—marshaling mortgage securities in favor of the latter.* A purchaser of real estate at tax sale acquires no equitable right to the benefit of a marshaling of securities in his favor. The rule *caveat emptor* applies strictly to him. Such purchaser either gets the land or nothing.

7. So such purchaser acquires no equity that will authorize him or the courts to look into the collateral transactions of a mortgagee, for

the purpose of ascertaining whether the latter has two or more funds to which he can resort for the payment of his debt, and to compel him to first resort to the fund that will not defeat or injuriously affect the tax title.

8. The doctrine of marshaling securities applies only as between different creditors, and between other persons who have equities, and stand towards each other in a like relation, as, between sureties and creditors.

9. In this case, a mortgage was given on a house and lot and four other lots, to secure a debt nearly of the value of the property. The house and lot were sold for taxes which were claimed to have been paid by the mortgagor, and for an illegal tax. Some time afterwards the debtor gave a second mortgage on other land, to protect the mortgagee against loss, this second mortgage, however, not to be enforced except in the event of the loss of the house and lot, and the failure of the property first mortgaged to realize enough to pay the mortgage debt. The mortgagee filed his bill to have the tax sale set aside : *Held,* that it was not incumbent upon the mortgagee to exhaust the security afforded by the other four lots in the first mortgage, or the land in the second one, before he could have the tax sale set aside.

10. In such case, the holder of the two mortgages was under no legal or equitable obligation to give the holder of the tax certificate the benefit of any of his securities. Such securities were intended only for the mortgagee's benefit.

11. SAME—*setting aside sale upon terms—offer to reimburse for taxes paid.* One who comes into a court of equity to have a tax sale set aside as a cloud upon his title, must tender or offer to pay to the holder of the certificate of purchase the amount of the lawful and valid taxes embraced in the judgment, and all subsequent taxes paid by him, with six per cent interest thereon.

12. A bill to set aside a sale of land for taxes, as a cloud on the title, alleged the tender of the legal taxes due, and that complainant was willing and able to pay whatever taxes, penalties and costs were lawfully and equitably due upon the premises, either to the purchaser at the sale or into court, and prayed for the taking of an account of the legal taxes, penalties and costs due and unpaid on the property, and that in equity ought to be paid by him : *Held,* that this was a sufficient offer to pay the sum equitably due for taxes.

13. Where land is sold, and the judgment includes illegal taxes, the court, on bill to set aside the sale as a cloud on title, should find the amount of the legal taxes, penalties and costs included in the judgment, and all subsequent taxes paid by the purchaser on the premises, with six per cent interest thereon, and decree that complainant pay the purchaser the aggregate amount thus found by a short day, and that, on

default of payment by the complainant of such sum within the time fixed, the bill be dismissed at his costs.

14. A purchaser at tax sale, as against a mortgagee whose interest accrued prior to the judgment and sale for taxes, acquires only a contingent equity, in case a particular remedy is sought in equity, to be reimbursed for that portion of the taxes which was unpaid and which was legally chargeable.

15. SAME—tax title—strict construction. A tax title is stricti juris. It is a purely technical, as distinguished from a meritorious, title, and depends for its validity upon a strict compliance with the statute, and a court of equity will not aid a purchaser at tax sale.

16. CHANCERY—supplemental bill—when appropriate—and its requisites. Where an original bill in chancery is wholly defective, as showing no grounds of relief, it can not be sustained by filing a supplemental bill founded upon matters which have subsequently taken place. But if the original bill is sufficient for one kind of relief, and facts afterward occur which entitle the complainant to other and more extensive relief, he may have such other relief by setting out the new matter in a supplemental bill.

17. A supplemental bill may be brought, not only to insist upon the relief already prayed for in the original bill, but upon other relief different from that prayed for by the original bill, when facts which have since occurred may require it. The supplemental bill must be in respect to the same title in the same person, as stated in the original bill. It must be germane to the original bill.

18. A mortgagee filed his bill to set aside a tax sale as to a part of the premises embraced in his mortgage, on the ground of payment or tender of payment of all the legal taxes thereon. He afterward exhibited his supplemental bill showing the foreclosure of his mortgage, and a conveyance to him as the purchaser at the foreclosure sale : Held, that as there was equity in the original bill, the supplemental bill was proper.

19. CREDITOR—right to protect his security—conditions to the right. A creditor who has taken security for his debt, should not, before being allowed to protect such security by an injunction, be required to either prosecute his debtor to insolvency, or affirmatively show that such debtor is wholly insolvent. He may protect any security the loss of which may endanger his debt.

20. EVIDENCE—declarations of mortgagor—to the injury of the mortgagee. The declarations or statements of a mortgagor after the execution of the mortgage, are not admissible in evidence to defeat the rights of the mortgagee.

21. APPEALS—reviewing the facts—in cases at law and in chancery. The rule that the findings of fact by the Appellate Court are final and

conclusive upon this court, applies only in actions at law, and not to suits in equity. It is the practice of this court in reviewing cases in chancery, to examine and determine for itself the truth in respect to controverted questions of fact.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of Jefferson county; the Hon. C. C. BOGGS, Judge, presiding.

On July 15, 1885, Adolphus Miller filed his bill against Cook and Tanner, alleging complainant had an interest in 160¾ feet off of the west end of lot 48, block 7, in Mt. Vernon, Illinois, as mortgagee of D. C. Warren, by mortgage dated May 4, 1881, recorded May 6, 1881, given to secure $3000 loaned to Warren, still due and owing to complainant; that he relies upon said real estate for security for the payment thereof, the value of said real estate being about $3000 ; that at the date of the mortgage, taxes were due and liens upon said premises for the years 1875 to 1880, both inclusive, to the amount of $145.97, which were fully paid by Warren in 1881, and that Warren has paid the taxes for the years subsequent thereto, yet the collector failed to discharge the same of record, but allowed the same to remain an apparent charge upon said premises, and the same were carried forward, from year to year, against said premises, for the amount paid by Warren, and for the amount, also, of an illegal and unconstitutional tax assessed for county purposes, until the May term, 1883, of the Jefferson county court, when the collector obtained judgment against said premises for $228.56, which sum included the amount of taxes so paid by Warren, and the said illegal and unconstitutional tax, and also the legal taxes for 1881 and 1882, amounting, with legal penalties, interest and costs, to $41.51, which latter sum was tendered to the collector before tax sale; that thereafter, on June 8, 1883, the collector sold said premises to said Cook for said sum of $228.56,—all of which proceedings to obtain said judgment and make such sale

13—135 ILL.

were unknown to complainant, who made no appearance in said county court; that Cook was fully notified by Warren, before the sale to him, of the payment of taxes by Warren, and of the illegal character of the judgment, and that the same would be contested. The bill further alleged that notice had been served on complainant by Cook that he would take out a tax deed for said premises, under said sale, and that said Cook was about to apply for, and his co-defendant, Tanner, county clerk of said county, was about to issue and deliver, a tax deed therefor, and thus take away and destroy the interest of complainant in said premises, amounting to $3000, and destroy the security of complainant for the payment of his debt. The bill offered to pay Cook or the collector, as the court should direct, all lawful taxes, penalties, interest and costs unpaid upon said premises, as well as all taxes thereon paid by Cook since his purchase, and prayed that an account be taken of the amount to be so paid, and for a perpetual injunction restraining Cook, his agents or assigns, from taking out a tax deed for said premises, and restraining Tanner or his deputy from issuing any tax deed for said premises to any person, and that said sale be declared void. There was also a prayer for general relief.

The answer of the defendants admitted the purchase of the premises by Cook, denied taxes had been paid at date of purchase, as alleged, or that any unconstitutional tax was levied, or that Warren notified Cook, as alleged, and averred that the mortgage to Miller included other valuable improved real estate in Mt. Vernon, worth $5000, and afforded ample security for Miller's debt; that the lot sold to Cook is occupied, and Miller not in possession; that Miller is estopped from bringing said bill by a former adjudication of this case in the suit brought by D. C. Warren against Cook, decided at the May term, 1885, of the Jefferson circuit court, and affirmed at the November term, 1885, of the Supreme Court; that this bill is, in fact, a second bill by Warren, in the name of Miller, and

that Miller is in no way interested in the present litigation, which is the same, in interest, with the former litigation between Warren and Cook in the said bill brought to said May term, 1885, of said circuit court, which was there dismissed by the court, and that decision affirmed by the Supreme Court. The answer further averred that Miller was notified by Cook, at the time and in the manner required by law, of his intention to apply for a tax deed, and when the time for redemption would expire, and that he, having failed to redeem from said tax sale, was now estopped from so doing; and further, that on April 28, 1886, Warren gave a mortgage for $3000 on valuable farming land in said county, to Miller, to secure him against loss of security arising out of this litigation.

Replication was filed, and the cause was heard on bill, answer, replication and proofs, and a decree was entered that Miller first pay to Cook the sum of $100.25, and that thereupon the tax judgment and the certificate of purchase to Cook be null and void, and that the injunction restraining the execution, delivery and receiving of a tax deed be made perpetual, and that Cook pay the costs. Upon an appeal prosecuted by Cook to the Appellate Court for the Fourth District, this first decree was reversed and the cause remanded. *Cook* v. *Miller*, 26 Ill. App. 421.

Upon the remandment to the circuit court, and on June 9, 1888, Miller filed his amended bill, alleging his interest in the lot in controversy as mortgagee of Warren, as in his original bill; that the mortgage conveyed also four other lots, of the value of $1200; that the lot in controversy is worth $1800, and Warren paid the collector all taxes due thereon, including those for 1880, but the collector neglected to mark them off, and left them an apparent just charge against said lot, and the same was carried forward on the tax book, from year to year, until 1883, and on May 29 of that year judgment for taxes against said lot was obtained, and on June 8, 1883, the lot was sold thereunder to Cook, for $228; that the time for

redemption having expired, Cook is about to apply for a tax deed, and thereby cause irreparable injury to complainant, in taking away and destroying a large part of his mortgage security, said Warren being, as complainant is informed and believes, insolvent, and unable to pay said debt, or any considerable portion of it, since its maturity; that foreclosure of said mortgage and sale of said property will have to be made; that said tax judgment, as against complainant, is illegal, in that it included said taxes paid by Warren, and an illegal and unconstitutional tax levied for county purposes; that Cook had notice thereof at and before the time he purchased; that the only amount legally due and unpaid for taxes, interest and penalties on said lot, at the time of sale, was $41.51, which sum Warren tendered the collector before the sale, and it was by him refused; that complainant is willing and able to pay whatever taxes, penalties and costs may be lawfully and equitably due upon said premises to Cook, or into court; that nearly $3500 of the mortgage debt is due and unpaid to complainant, and the entire property mortgaged is not worth the amount of debt and interest; that if Cook be allowed to take said lot, complainant will lose more than one-half of his said debt; prays for taking an account of legal taxes, penalties, interest and costs due and unpaid on said lot, that ought, in equity, to be paid by complainant to Cook; that said tax judgment be declared void so far as it affects complainant's rights as mortgagee, or the title of any purchaser at a sale made under decree of foreclosure of said mortgage; that the temporary injunction heretofore granted be continued in force, and for general relief.

On the same day Miller filed a supplemental bill, alleging the filing of his original bill, answer thereto and replication, hearing, and decree for complainant, as prayed, the reversal thereof by the Appellate Court, and remanding of the cause; that since filing the original bill, complainant has been compelled to foreclose said mortgage, and filed his bill for that

purpose at the December term, 1886, of said circuit court, and obtained a decree against Warren at that term for the payment of the mortgage debt, and in default of the payment thereof the mortgaged premises, including this lot, were, by virtue of the decree, and on February 12, 1887, by the master in chancery offered for sale in separate parcels, and no bid being made, the same were then offered for sale in a body, and no one bidding as much as the debt, interest and costs, complainant was compelled to and did buy in all of said property, and received his certificate; that no one redeemed, and complainant received his deed from the master, and is in possession of and has title to all the said lots; that the illegal tax sale and judgment cast a cloud on his said title to the lot in controversy, and prays said judgment and tax sale be decreed wholly subject to the rights of complainant, and, so far as the same will have any effect as a shadow upon his title, the injunction be made perpetual, and any tax deed to be issued upon said tax sale be postponed to and be declared subject to complainant's rights in said lot, and defendants be restrained from asserting the same as against the rights of complainant, and for general relief.

Answers were filed to the amended and supplemental bills, and replications to such answers were interposed. The cause was then heard upon the pleadings and proofs, and a decree duly entered. This latter decree finds that Cook bought the lot at tax sale on June 8, 1883; that said sale was made by virtue of a judgment and order of sale of the Jefferson county court, entered at its May term, 1883, for taxes, interest, penalties and costs, for the years 1875 to 1882, both inclusive, amounting to $228.56; that Warren was then the owner of said lot, and Miller was then interested therein, as mortgagee of Warren, by virtue of a mortgage executed and delivered May 4, 1881, to secure the sum of $3000 and interest; that at the time of the rendition of said judgment the mortgage debt was due and unpaid, and the mortgage lien then existed

of record in favor of Miller; that Warren filed objections in said county court, at its May term, 1883, to the rendition of said tax judgment, and was heard, and as to him and his right, title and interest in said lot, said judgment is conclusive, and the sale thereunder divested him of title, but subject to his right of redemption, which right not having been exercised, said title and interest of Warren passed to Cook and became vested in him; that Miller was not personally subject to the jurisdiction of said county court when said judgment and order of sale were entered, and said judgment is not conclusive as to him; that the taxes upon said lot for the years 1875 to 1880, both inclusive, amounting to $145.97, had been paid by Warren to the collector prior to the rendition of said judgment, and a receipt given therefor, but the collector did not mark the same as paid on the tax books; that the same were included in the sum for which said judgment was rendered, and entered into and formed the larger part of the amount for which said lot was so sold, and that the tax levied upon said lot, for county purposes, for 1882, was unconstitutional and void, and formed part of said tax judgment, and said judgment is decreed to be void, as against the interest of Miller; finds said mortgage was foreclosed, and sale of mortgaged premises to Miller, the taking out of the certificate and master's deed by Miller, as alleged, and that he went into and is in possession of said lot, as alleged; that Cook was not a party to the foreclosure suit, and the decree therein does not bind or affect his right or interest in said mortgaged property; that Cook is entitled, by virtue of said tax judgment and sale, to receive and be vested with Warren's title in said lot, but that such right should not operate as a cloud upon Miller's title and interest, and Cook should take and receive Warren's title, subject to the lien of Miller's mortgage, to be enforced according to the equities of Cook and Miller existing then or arising since, as may be determined hereafter by any court having jurisdiction of the parties and subject matter; that said tax judgment is

of no valid force or effect as against Miller as mortgagee, but as to his equities and liens arising by reason of said mortgage, said judgment and the sale thereunder, and all proceedings thereunder, shall be for naught esteemed, further than to pass to Cook all Warren's title and interest in and to said lot; that Tanner, the county clerk, be relieved of the injunction, to the end he may, upon presentation of said certificate of purchase by Cook, and of such further evidence and proofs as by the statute are required to authorize its issuance, execute and deliver a tax deed to Cook in form as provided by the statute, conveying to Cook said lot, provided he applied for said deed within one year, and permits Cook to apply for and receive said deed, but that the title to be conveyed by said deed is to be received by Cook subject to the lien of Miller's mortgage on the lot, and that Miller and Cook each pay half the costs.

Upon a second appeal to the Appellate Court the decree was reversed, and the cause remanded to the circuit court, with directions to dissolve the injunction and dismiss the original, amended and supplemental bills. An appeal prosecuted by Miller brings the record to this court.

Mr. C. H. PATTON, and Mr. C. P. KNISPEL, for the appellant:

As to the first point. In a bill to procure the cancellation of a certificate of tax purchase, an offer to pay whatever moneys, taxes and interest equity may require, is a good offer to do equity. *Sankey* v. *Seipp*, 27 Ill. App. 299.

Appellant has made the offer to pay the taxes legally due, with costs, penalties, interest, etc., and if the circuit court failed to decree the payment of the sum equitably due, then, if such decree was erroneous, the decree should have been modified, or remanded with instructions,—not the bill dismissed. *Gage* v. *Busse*, 114 Ill. 589.

As to the second point. It is now beyond question that equity will enjoin the collection of a tax in itself unauthorized by law. *New York Exchange* v. *Gleason*, 121 Ill. 508; *Phœnix*

*Exchange* v. *Gleason,* id. 527; *Keigwin* v. *Drainage Comrs.* 115 id. 351.

That a tax deed invalid for any purpose may be declared void in equity, as a cloud, see *Bell* v. *Johnson,* 111 Ill. 381; *Converse* v. *Rankin,* 115 id. 399.

That a sale on judgment for taxes in excess of authority of law is void, see *Harland* v. *Eastman,* 119 Ill. 25.

That where a part of a tax for which a sale of real estate is made is illegal, the sale will be void, see *McLaughlin* v. *Thompson,* 55 Ill. 249; *Riverside Co.* v. *Howell,* 113 id. 256; Blackwell on Tax Titles, 160.

It was shown that part of the tax was illegal. How can the Appellate Court pass over this in silence, and order the bill to be dismissed? If part of the tax was illegal, the sale was illegal, and any certificate or deed issued upon said sale is void, but operates as a cloud upon appellant's title, which cloud should be removed. It is not an answer to say, that it is not shown that irreparable injury is done. It is no answer to say, that Miller, having received an additional mortgage to indemnify him in case of loss or of insufficiency of the security of the first mortgage, therefore shall be compelled to exhaust his indemnifying mortgage before he can claim his rights under the original mortgage. · This is virtually the position taken by appellee.

Mr. C. H. BURTON, for the appellees:

The Supreme Court does not review questions of fact. *Provision Co.* v. *Chicago,* 111 Ill. 654; *Insurance Co.* v. *Grunert,* 112 id. 79; *Erie and Pacific Despatch* v. *Cecil,* id. 184; *Laflin* v. *Howe,* id. 262.

Appellate Court decisions are final as to facts. *Insurance Co.* v. *Barrel Co.* 114 Ill. 102; *Insurance Co.* v. *Brown,* 123 id. 359; *People ex rel.* v. *Soucy,* 122 id. 337; *Nat. Stock Yards* v. *Ferry Co.* 112 id. 391.

This is the holding, "no matter what the Supreme Court thinks as to the facts." *Railroad Co.* v. *Haskins,* 115 Ill. 302.

Where the Appellate Court finds the facts differently from the trial court, and so recites in its findings, such decision is conclusive. *Williams* v. *Forbes,* 114 Ill. 170.

It is a general rule, that where an original bill shows no ground for relief, it can not be aided by a supplemental bill, setting up matters that have arisen since the filing of the original bill. Story's Eq. Pl. sec. 339.

In this case the supplemental bill does not merely present matters that have arisen since the filing of the bill, but the prayer to remove a cloud on the title has no connection or relation to the relief originally sought in the bill for an injunction. *Fahs* v. *Roberts,* 54 Ill. 192.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The claim' so strenuously urged by appellees, Cook and others, that the findings of fact made in this cause by the Appellate Court are final and conclusive, is wholly inadmissible. The very numerous cases cited in behalf of such contention were all actions at law, which were governed by the provisions of the Practice act, and the rule which prevailed in them has no application to this suit in equity. It is the practice of this court, in reviewing causes in chancery, to examine and determine for itself the truth in respect to controverted questions of fact, from the evidence in the record, and there is no legislation which militates against such practice. *French* v. *Gibbs,* 105 Ill. 523; *Moore* v. *Tierney,* 100 id. 207; *Stillman* v. *Stillman,* 99 id. 196; *Joliet and Chicago Railroad Co.* v. *Healy,* 94 id. 416; *Fanning* v. *Russell,* id. 386.

It is claimed by appellees that appellant is acting for Warren in this litigation, and is barred from bringing this suit by the adjudication in *Warren* v. *Cook et al.* 116 Ill. 199. There are circumstances in the case that look somewhat suspicious,

but they are not inconsistent with the fact that appellant is the only party in interest, and is litigating at his own expense and for his own benefit. The clear preponderance of the evidence is to the effect that he is the real as well as nominal complainant, and that there is no collusion or conspiracy in the interest of Warren. The positive and explicit testimony of both appellant and Warren sustains this view, and it is corroborated by that of Mr. Patton. The only witness whose evidence tends to the contrary, is Cook, one of the appellees. He testifies to a conversation with appellant, and appellant explicitly denies any such conversation. It is improbable that appellant would, pending the litigation, have voluntarily made to his principal adversary the admissions testified to. Counsel refer in their briefs to a statement by the witness Lynch, that Warren complained to him because Miller would not divide the proceeds of the sale of the lots. We find no such testimony, either in the abstract or record. It would be incompetent testimony as against Miller, even if it was in the record; and even if it were competent testimony, it would seem to be more favorable to appellant than to appellees. The mere fact that Warren, about a year after the institution of this suit, gave to appellant a collateral mortgage on one hundred acres of land, the condition of which was that it was to be valid only in case Miller should lose his security upon the premises herein controversy, under the chancery proceedings pending, or in case the property in the first mortgage should prove insufficient to secure the debt to Miller, seems to us to have but little, if any, probative force to show that this bill was filed and prosecuted in the interest of Warren. The witnesses herein were examined orally at the hearing, and in the presence of the chancellor, and he came to the conclusion that there was no sufficient ground for the claim of collusion, and in that conclusion we concur.

The right of appellant to prosecute a bill for an injunction and to vacate the tax sale is questioned. Section 5, of ar-

ticle 9, of the constitution of 1870, expressly provides that the right of redemption from all sales of real estate for the non-payment of taxes shall exist in favor of owners and persons interested in such real estate; and the rule is, that the right to bring suit for the purpose of setting aside a tax sale and having the deed declared void, is not confined to the original owner of the land, but may be exercised by his mortgagee or by any person who can show such an interest in the estate as would have entitled him to redeem. Blackwell on Tax Titles, sec. 238.

The case of appellant, as appears both from the allegations made in his several bills of complaint and from the proofs, is predicated upon these central facts: that almost two-thirds of the amount of the taxes for which the lot was sold had been paid by Warren, the owner, prior to the sale, and a portion of the residue of the taxes was unconstitutional and illegal.

It is useless now to inquire whether the bill of appellant, as it was originally filed, was sufficient to authorize the issuance of an injunction. Suffice it to say that amendments were made to the bill, and that these amendments related back to the filing of the original bill, and that the bill, as amended, showed sufficient grounds upon its face for an injunction as well as for equitable relief. It appeared therefrom that the four lots which were included in the mortgage, along with the lot in controversy, were worth about $1200, and that some $4500 was due upon the mortgage debt; that Warren was insolvent; that the debt would have to be collected by foreclosure proceedings, and that the mortgaged property to be left, if Cook took the tax lot, would not pay the debt. The case made by the proofs, so far as regards the amended bill, is not as strong as the case stated in that bill; still we think sufficient appears in the evidence to show that there was, as matter of fact, equity in that bill. In our opinion the evidence does not justify the conclusion that Warren was insolvent when the bill was filed, in 1885, to such an extent that the residue of the debt remaining

unpaid after a sale of the four mortgaged lots other than the tax lot, could not have been collected by execution; but we do not think that a creditor who has taken the precaution to obtain ample security for his debt, should, before he is permitted to protect such security by an injunction, be required to either prosecute his debtor to insolvency, or affirmatively show that such debtor is wholly insolvent. It is, in the sense of the law, an irreparable injury to be deprived of the security which he has been to the pains of procuring, and the loss of which will endanger his debt. The amount of the debt when the bill was filed was $3023.92. The value of the four lots is shown to have been less than $3000, the average valuation placed thereon by the witnesses being $2737.50, and they all concur in saying that at forced sale, and with right of redemption, the lots would have brought much less. In respect to the collateral mortgage, it is sufficient, in this connection, to remark, that it was not executed until more than nine months after the bill was filed.

The case made for appellant under the supplemental bill, by the pleadings and proofs, is even more meritorious. It shows that since the filing of the original bill the mortgage was foreclosed, and the five lots, including the lot in controversy, sold at public vendue by the master in chancery, and that in order to make them bring the amount of the debt, interest and costs, appellant was compelled to buy them himself; that they were not redeemed, and that he had received a deed for them, and was in possession of them, including the lot in controversy, under his title and as owner, and that the illegal tax sale and tax judgment were and are a cloud upon his title.

It is claimed that the supplemental bill is not based upon the same grounds that the original and amended bills were based on; that the case made by the supplemental bill has no connection with the original cause of action, and lends it no support; and that the rule is, that when an original bill shows no ground for relief, it can not be aided by a supplemental

bill, setting up matters that have arisen since the filing of the original bill. The rule, as we understand it, is well stated by Chancellor WALWORTH in *Candler* v. *Pettit,* 1 Paige's Ch. 168, and is, in substance, that if an original bill is wholly defective, and there is no ground for proceeding upon it, it can not be sustained by filing a supplemental bill, founded upon matters which have subsequently taken place; but that if the original bill is sufficient for one kind of relief, and facts afterwards occur which entitle the complainant to other and more extensive relief, he may have such relief by setting out the new matter in a supplemental bill. In Story's Equity Pleading, (8th ed.) sec. 336, it is said: "A supplemental bill may also be brought, not only to insist upon the relief already prayed for in the original bill, but upon other relief different from that prayed for by the original bill, where facts which have since occurred may require it." In section 339 it is said: "To entitle the plaintiff to file a supplemental bill, and thereby to obtain the benefit of the former proceedings, it must be in respect to the same title in the same person, as stated in the original bill." And in section 346 it is said: "When an event happens, subsequent to the time of filing an original bill, * * * which gives a new interest to a party, * * * the defect may be supplied by a bill, which is usually called a supplemental bill, and is, in fact, merely so with respect to the rest of the suit, although with respect to its immediate object * * * it has in some degree the effect of an original bill."

Appellant filed his original bill as mortgagee, and he went into possession of the premises in controversy, and exhibited his supplemental bill, under and in respect to the title which was conveyed to him by the mortgage. We have already seen that there was equity in his amended original bill, and, within the rule, the supplementary bill was a proper supplementary bill thereto. This view is not inconsistent with the decision in *Fahs et al.* v. *Roberts et al.* 54 Ill. 192. There the original

bill enjoined the sale of property levied on under execution, on the ground that such property was not liable to levy, and the supplemental bill was based on the fact, that in the meantime the judgment on which the execution issued had been reversed, and it was held, that as the original bill showed no ground for injunction, and as the supplemental bill merely presented matters, arising since suit brought, which had no connection whatever with the ground of relief set forth in the original bill, the bills should have been dismissed. There, the supplemental bill was not germane to the original bill; but here it is otherwise.

It is claimed by appellees that appellant would not be entitled to relief in a court of equity, without it appeared that the other four lots included in the first mortgage were not sufficient to satisfy the debt, and also appeared that the one hundred acres of land covered by the second mortgage, and said four lots, all taken together, were insufficient in value to pay the same. In regard to the mortgage on the one hundred acres of land, it may be said, that even if the appellee Cook was invested with equities in respect to the lot in controversy, it would not be required of appellant that he should give to appellee the benefit of the collateral mortgage which was executed by Warren to him for the purpose of securing him harmless in the matter of the securities first given for the borrowed money, and with the express agreement that it should be valid only in the event of the loss of a part of the security theretofore given, or in the event such security should prove insufficient, and with the implied agreement that appellant should in good faith exhaust all his legal and equitable rights and remedies to retain the security first given, before he could look to the collateral.

But waiving this, that which appellee Cook, in substance, claims, is the benefit of a marshaling of securities in his favor. The rules of equity deny to him any right to such benefit. What property rights, if any, either legal or equitable, did he

get by his purchase of the lot for taxes? He bought strictly under the operation of the rule *caveat emptor;* and the doctrine is, that a purchaser at a tax sale either gets the land or gets nothing, unless it be a mere color of title. It is true that under the circumstances of this particular case, Warren, the owner, was estopped from questioning either the sale or the certificate of purchase, or any deed that might have been issued thereon. But the estoppel applied only to Warren and those claiming rights derived from him subsequent to the judgment for taxes. As against appellant, whose interest in the premises as mortgagee had accrued prior to the judgment and sale, he got nothing whatever except a contingent equity, under circumstances of a particular remedy being sought by appellant in a court of equity, to be reimbursed for that portion of the taxes which was unpaid, and which was legally chargeable on the lot. Cooley on Taxation, 476.

A tax title is *stricti juris.* In *Altes* v. *Hinckler et al.* 36 Ill. 265, it was said by this court: "It is a purely technical, as contradistinguished from a meritorious, title, and depends for its validity upon a strict compliance with the statute," and it was there held that a court of chancery will not aid a purchaser at a tax sale. See, also, *Keepfer* v. *Force,* 86 Ind. 81, *Bowers* v. *Andrews et al.* 52 Miss. 596, and *Cogburn* v. *Hunt,* 56 id. 718.

It was not incumbent upon appellant to first exhaust the security afforded by the other four lots or by the one hundred acres of land. Equities arise out of contract relations, and there is no element of contract in the imposition or collection of taxes, or in the relation existing between the purchaser of property for taxes and the owner of such property or of an interest therein. A tax title is hostile to every other interest in the land, and there are no equities, except strictly in the qualified sense and to the qualified extent above indicated, between the holder of such title and the owner or holder of such interest. Appellee, by his purchase and tax certificate, acquired no

equity which would authorize either him or the courts to look into the collateral transactions of appellant, for the purpose of ascertaining whether the latter has two or more funds to which he can resort for the payment of his debt, and compel him to first resort to the fund that will not defeat or injuriously affect the tax title. The doctrine of marshaling securities applies only as between different creditors, and between other persons who have equities and stand towards each other in a like relation, as, between sureties and creditors. 1 Story's Eq. Jur. chap. 13; Bispham's Eq. (3d ed.) sec. 344; *Plain* v. *Roth,* 107 Ill. 588; *Prout* v. *Lomer,* 79 id. 331; *Rogers* v. *Meyers,* 68 id. 92; *Dorr* v. *Shaw,* 4 Johns. Ch. *17. In *Iglehart* v. *Crane & Wesson,* 42 Ill. 261, and *Matteson* v. *Thomas,* 41 id. 110, and numerous subsequent cases, application has been made of the principle of marshaling, by requiring the sale of mortgaged premises in the inverse order of alienation; but appellee Cook is not the grantee of Warren, nor in privity with him, but claims adversely and in hostility to him.

The Appellate Court decided that "the equitable rights of Miller are not alone to be considered, but Cook also has equitable rights that ought not to be ignored," and it reversed the decree of the circuit court and remanded the cause, with directions to the circuit court to dissolve the injunction and dismiss the bill and the amended and supplemental bills. In the view that we have taken of the case, this was error.

The decree of the circuit court was also erroneous, in several respects. Among other things it found and decreed that Cook was not a party to the foreclosure suit prosecuted by Miller; that the decree therein does not bind or affect the right or interest of Cook in the mortgaged property; that Cook is entitled, by virtue of the tax judgment and sale, to receive and be vested with Warren's title to the lot, and that he should take and receive such title subject to the lien of Miller's mortgages, to be enforced according to the equities of Cook and Miller existing then or arising since, as may be determined

hereafter by any court having jurisdiction of the parties and subject matter; and that the tax judgment and the sale thereunder should pass to Cook all Warren's title and interest in and to said lot. This was manifest error. A simple estoppel can not be held to have the effect of a conveyance. The estoppel, as we have already seen, was applicable alone to Warren, and its effect was only to prevent him from questioning the validity of the tax title, and it did not transfer the title of Warren to Cook. It did not put Cook into the shoes of Warren, and make him the owner of the equity of redemption under the mortgage held by appellant.

Appellee has no property right, nor title, nor interest, either legal or equitable, in or to the lot. The only equity which can be made available to him is one that grows out of a duty which equity imposes upon appellant. One who comes into a court of chancery asking to have a tax sale set aside as a cloud upon his title, must tender or offer to pay to the holder of the certificate of purchase the amount of the lawful and valid taxes embraced in the judgment, and all subsequent taxes paid by him, with interest thereon. (*Moore* v. *Wayman et al.* 107 Ill. 192, and cases there cited.) Appellant admitted in his bill that $41.51 was legally due and unpaid on the lot at the time of the sale, for taxes, interest and penalties, and claimed that Warren had tendered the same to the collector before the sale, and it was by him refused; and he alleged that he was willing and able to pay whatever taxes, penalties and costs were lawfully and equitably due upon the premises, either to Cook or into court, and he prayed for taking an account of legal taxes, penalties, interest and costs due and unpaid on the lot, and that ought, in equity, to be paid by him. This was a sufficient offer to pay the sum equitably due for taxes. But the court failed to have an account taken of the taxes, or to find the amount due appellee therefor, or to decree its payment. This, also, was error.

14—135 ILL.

The judgment of the Appellate Court is reversed. The decree of the circuit court is also reversed. The cause is remanded to the latter court, with directions to find the amount of legal taxes, penalties and costs included in the tax judgment, and all subsequent taxes paid by appellee Cook on the premises, and six per cent interest upon said amounts, and to decree that appellant pay to said appellee, within a short day to be named, the aggregate of these amounts, and to further decree that upon such payment being made the injunction herein be made perpetual, and further to enter a decree in conformity with the prayers of the amended and supplemental bills and the views herein expressed, and, finally, to decree that in default of payment by appellant of the aggregate amount decreed to be paid to appellee Cook within the time fixed by the decree, the bill be dismissed at the costs of appellant.

*Judgment reversed.*