# Northwestern Traveling Men's Association v. Rachel L. Raphael.

## Gen. No. 12,426.

1. INSURANCE ORGANIZATION—*when will not be enjoined from disposing of emergency fund.* Equity will not enjoin an insurance organization from making disbursements from an emergency fund where no fraud is charged and where the purpose of the proceeding is to hold the fund intact pending a trial to see if such fund will not be required to answer a decree or judgment which the complainant hopes to obtain.

Appeal from interlocutory order granting injunction. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Reversed. Opinion filed July 14, 1905.

**Statement by the Court.**     This is an appeal from an interlocutory injunction order, restraining appellant from disposing of or paying out its emergency fund.

On May 1, 1905, appellee filed her bill of complaint against appellant in the Superior Court of Cook county, alleging that one Philip L. Raphael, who died March 18, 1903, was at the time of his death a member in good standing of the appellant; that appellant is an Illinois corporation not for pecuniary profit, organized under the laws of 1872, and claiming that under the laws of 1893 it became and is a fraternal beneficiary society; that appellee, as the beneficiary named by the said Raphael, upon his death became entitled to all the benefits of his certificate of membership.     Appellee alleges that the association, by force and virtue of its constitution and by-laws, was obligated to pay appellee, as beneficiary, the sum of $4,000 upon the death of said Raphael.     Appellee sets forth in her bill such portions of the constitution and by-laws of the association as she thinks are material to the decision of the question of the liability claimed.     After setting forth the portion making provision for the levying of an assessment for a specific amount on each member, to pay the death loss of a deceased member, the following portions of the constitution and by-laws applicable to this case are set forth, viz.: Section 2 and paragraphs 1, 5, 6 and 7 of section 4 of article 5 of the constitution, as follows:

"Sec. 2.     Upon proof of death of any member of this association, which shall be satisfactory to the Board of Directors, they may order an assessment against each member of the association, in accordance with the assessed member's grade and denomination of his certificate or certificates (as provided in Sec. 1, Art. V) and the denomination of the deceased member's certificate or certificates and shall order paid, the amount collected upon such mortuary assessment to the person or persons entitled thereto the amount of payment to be made upon any membership certificate not to exceed $4,000, $3,000, $2,000 or $1,000, as

determined by the denomination of certificate or certificates
in force, and held by the member at the time of his death
and recorded on the books of the association, and the bene-
fits accruing from the association shall be paid in the order
hereinafter named and not otherwise, to-wit:

First.    To the person or persons, if they shall survive
him, to whom the deceased member, in his application for
membership, or in the form prescribed by said association,
shall have directed the same to be paid.

Sec. 4.    For the purpose of providing and maintaining
an emergency fund, the Board of Directors may order an
assessment, when necessary, upon each member of the asso-
ciation, each assessment to be equal in amount to one mortu-
ary assessment, and the amount so collected shall be placed in
the emergency fund.    Such emergency assessment may be
ordered by the Board of Directors at any time during the
year with a regular mortuary assessment, but no emergency
assessment shall be made during any month when the mor-
tuary assessments of that month exceed four.

Sec. 5.    No part of the emergency fund or interest ac-
cruing therefrom shall be paid out, or in any manner en-
croached upon except by an affirmative vote of not less than
five members of the Board of Directors, at a regular meet-
ing of the Board of Directors, and then only for the pay-
ment of death losses, or for the payment of indigent claims,
as provided in article V, section 6.

Sec. 6.    Should the amount collected, as provided in ar-
ticle V, section 1, be less than the prescribed limit upon any
membership certificate, such deficiency may be paid from
the emergency fund, if there shall be an amount of money
remaining in said fund sufficient for that purpose.

Sec. 7.    The Board of Directors may also, at their dis-
cretion, order one or more death losses paid by borrowing
temporarily from the emergency fund, when in their opin-
ion an emergency exists.    In all cases of payment of death
losses by a temporary loan from the emergency fund, the
Board of Directors may order a regular mortuary assess-
ment for each death loss so paid, and the money so collected

shall be returned to the emergency fund. When no regular mortuary assessment shall be ordered to reimburse the emergency fund for death losses paid from the same, then, with the next assessment notice, there shall be mailed to each member a receipt, giving name, membership number and amount paid in each case from the emergency fund."

Appellee alleges that proof of the death of Raphael was duly made to the association which was satisfactory to the Board of Directors, and they thereupon ordered an assessment against each and every member of the association; that a large sum of money was collected, the exact amount of which she cannot state, and that in June, 1903, she received from the association $2,520, and in August, 1903, she received the further sum of $40 as such beneficiary, and that there is due and unpaid to her $1,440, with interest from August, 1903; that at the time of the death of said Raphael and at the present time the appellant association is the owner and possessed of a large sum of money and chattels of large value, including an emergency fund of $10,000.

Appellee further avers in her bill that the membership in the association is gradually decreasing and that unless appellant is restrained from paying out or disposing of the emergency fund, the assets of appellant association, including the emergency fund, will be dissipated, and lost to complainant, and she will suffer irreparable injury and prays that appellant association make full answer and that an account may be taken of the dealings and transactions of the association in and about the death of said Raphael; that appellant association be decreed to pay to her out of its emergency fund such sum of money as may be found to be due and unpaid to her, and that appellant be restrained from paying out or in any manner disposing of the emergency fund until the further order of the court.

The bill was verified. Complainant also filed an affidavit that she feared she would suffer great injury and lose all benefits of the writ of injunction if the writ was not issued

without notice to the defendant. In support of the bill
complainant also files a third affidavit in which she states
wholly upon information and belief that the membership
of the defendant is gradually decreasing; that many per-
sons, the number and names of whom are unknown to her,
beneficiaries of deceased members, hold claims against the
defendant; that the association is likely to be dissolved at
any time and that many suits will be commenced against it
for the purpose of satisfying claims out of the reserve fund;
that one such suit in equity has already been determined in
the Superior Court of Cook county entitled Crawford v.
The Northwestern Traveling Men's Association, in which
the defendant has been decreed to pay a large sum of money
out of its reserve fund to discharge a similar obligation to
that upon which this bill is founded, and that in order to
prevent the enforcement of similar decrees, the defendant
will distribute among its members or otherwise dispose of
its reserve fund, and that if notice was given to the de-
fendant of a motion for an injunction, that distribution
would be hastened and complainant would lose the benefit
of an injunction. The injunction was ordered upon the
filing of the bill, and on May 6, 1903, defendant's motion
to dissolve was denied.

DOLPH, BUELL & ABBEY, for appellant.

FISHELL & BERKSON, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The theory of appellee's bill is that she has an equitable
interest in the emergency fund in the hands of appellant
association which holds the fund in trust for the benefit
of its members or their beneficiaries, and that under the
constitution and by-laws of appellant, appellee is entitled
to have paid to her by appellant out of the emergency fund
$1,440 with interest from August, 1903.

The bill admits that upon the presentation of the proof
of death of Raphael, a mortuary assessment was ordered
against each and every member of the association and that

the amount of $2,560 was collected on the assessment and paid over to her. There is no allegation that more than this amount was collected on the mortuary assessment. The bill makes no averment of any mismanagement of the trust fund by the board of directors of appellant or by any of its officers or agents, or of any threatened misapplication thereof or of anything done or proposed to be done by appellant, having for its object the perversion of the alleged trust. The bill is not framed upon any such basis for controlling and preserving the fund. The court is asked to reach into this fund and take out $1,440 of the money and hand it over to complainant upon her general demand against appellant association which has never been established at law; and in the meantime, while the court is investigating the questions involved, that appellant shall be restrained from using the fund for the purposes for which it was created.

As a basis for this extraordinary relief it is alleged that the membership of appellant association is gradually decreasing and that the assets of appellant, including the emergency fund, will be dissipated and lost to complainant.

The trustee is not shown to have done any specific act or taken any steps inconsistent with a proper administration of the fund in accordance with the constitution and by-laws governing its management of the fund. Nor is it made to appear by the bill that appellant has refused to do any act which makes it proper for a court of equity to enjoin the appellant from using the fund as it is bound to use it under the laws by which it is governed. On the contrary it does appear that appellee is attempting by means of this injunction to obtain an unjust and inequitable advantage over other beneficiaries shown to exist, not to mention its injurious effects upon appellant. Courts should proceed with great caution in issuing writs of injunction. As said in Lloyd v. Catlin Coal Co., 210 Ill., 470: "It is the duty of the court to consider the inconvenience and damage that will result to the defendant as well as the benefit to accrue to the complainant by the granting of the writ, and where the defendant's damages and injuries will be greater by

35

granting the writ than will be the complainant's benefit by granting the writ, or greater than will be complainant's damages by the refusal of it, the court will, in the exercise of a sound discretion refuse the writ. Fullenwider v. Supreme Council of Royal League, 180 Ill., 621; Miller v. Cook, 135 Ill., 190; Seeger v. Mueller, 133 Ill., 86."

We are not aware of any principle of equity jurisprudence which will justify the issuing of an injunction in such a case as this to compel an association to hold a fund pending a hearing or trial to see if it will not be wanted to answer a decree or judgment which the complainant hopes to obtain. Phelps v. Foster, 18 Ill., 309; Shufeldt v. Boehm, 96 Ill., 560.

The order granting the injunction is reversed.

*Reversed.*