# William Truesdale

*v.*

# George Ford.

1. Notice of unrecorded deed—*by possession of property.* Possession, under an unrecorded deed, to be notice to subsequent *bona fide* purchasers, must be open, visible and exclusive; and must apprise the community that the occupant under the unrecorded deed has appropriated the property to his exclusive use.

2. Occupancy—*its character.* If the premises thus held are only occupied in common with others, and the public generally, it does not afford notice—it would not be hostile, or afford evidence that it was made under, or in the assertion of title. It will be presumed that all persons, before purchasing lands, will inform themselves of its condition, and if occupied, learn under what right.

3. Same—*what constitutes.* Possession of land may be held in different modes, by enclosure—by cultivation, by the erection of buildings, or other improvements; or, in fact, by any use that clearly indicates an appropriation to the use of the person claiming to hold the property.

4. Jury—*are to find the fact.* It is the province of the jury to find, under proper instructions, whether possession is proved. And their finding will not be disturbed unless manifestly against the evidence.

Appeal from the Circuit Court of Peoria county; the Hon. S. L. Richmond, Judge, presiding.

This was an action of ejectment, commenced by George Ford, against William Truesdale, on the 5th day of December, 1860, in the Peoria Circuit Court, to recover lot eleven, in block eighteen, in the city of Peoria. To the declaration, the plea of the general issue was filed. Afterwards, at the February term, 1864, of the court, a trial was had before the court and jury. On the trial, plaintiff introduced evidence of a title derived from the United States, to John Ford; a copy of a deed from him to George Oakley for the same premises, dated the 21st of January, 1846, and recorded on the 3d of February of the same year.

Also a quit-claim deed, for the same premises, from George Oakley to Hugh McGinity, dated the 13th of June, 1855, and recorded the 15th day of the same month. Also a deed from McGinnity to plaintiff, dated the 1st of August, 1857, but never recorded. Plaintiff then introduced *George McFadden*, the county surveyor, who identified the plat of the lot in dispute, and the adjoining grounds.

Defendant, Truesdale, then introduced the original deed from John Ford to George Oakley. Next, a deed from Oakley to Edward F. Nowland, for the same lot, dated the 2d of April, 1849, and recorded the 6th of September, 1855.

There was also a large amount of evidence introduced to prove that plaintiff in error, who derived title from Ballance, was in possession of the premises. That Ballance, as early as in 1851, claimed the premises in controversy, and leased them to Sweeney & Littleton at one dollar per month, and that they took possession of the lot and used it for piling saw logs and lumber in connection with their mill, which was situated on an adjoining lot, and so held it until in 1855. That Truesdale acquired the lot, and went into possession at the time Sweeney & Littleton ceased to occupy it. That he had held it ever since until the trial below.

On the other side, evidence was introduced to prove that the lot was not so occupied by Sweeney & Littleton, and Truesdale, but that the lot occupied by them was a different lot, which adjoined the one in controversy. Also to prove that the mode in which the lot was used did not amount to such possession as indicated who, if any person, claimed to occupy it.

The evidence on the question of possession by defendant, and those under whom he claimed, was conflicting, and, to some extent, contradictory.

The jury found a verdict for the plaintiff; and the defendant entered a motion for a new trial, which was overruled by the court; and a judgment was rendered on the verdict. Defendant brings the case to this court by appeal, and assigns the following, among other errors:

In refusing to give instructions asked by appellant.

In giving appellee's instructions.

In refusing to grant a new trial to appellant.

Because the judgment should, on the whole record, have been for appellant.

Mr. CHARLES BALLANCE, for appellant, cited the following authorities: *The Inhabitants of Worcester* v. *Eaten*, 11 Mass., 368; *Lake* v. *Haynes*, Ib., 498; *Peterson* v. *Willing*, 3 Dall., 506; *Sanger* v. *Tilton*, 1 Rawle, 141; *Baring* v. *Shippen*, 2 Binn., 154; *McFarman* v. *Powers*, 1 Serg. & Rawle, 102; *Browning* v. *Downing*, 4 Serg. & Rawle, 494; *Nichols* v. *Halgate*, 2 Aik. Ver. R., 138; *Taylor* v. *Beck*, 3 Rand., 316; *Boring* v. *Reeder*, 1 Hen. & Munf., 154; Philips' Ev., 1, 118–130, notes and the text page 130.

Mr. JOHN T. LINDSAY for appellee:

The whole testimony, taken together, shows that the possession was not exclusive or marked in its character. Every man, in passing the premises, seeing saw logs, lumber and slabs in street and vacant ground close to saw mill, would naturally suppose that they used it for temporary purposes. *Irving* v. *Brownell*, 11 Ill., 402; *McConnell* v. *Reed*, 4 Scam., 123.

A deed must be signed, sealed and delivered. 4 Kent, 449; *Pile* v. *McBratney*, 15 Ill., 317.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the court:

This was an action of ejectment, for the recovery of a lot of ground in the city of Peoria. There is no dispute of the fact, that the title, at one time, was in George Oakley; and both parties claim to derive title from him. Appellant, through a deed executed by him to Nowland, dated the 2d day of April, 1849, but not recorded until

the 5th day of September, 1855. Next, a deed from Nowland to Charles Ballance, dated the 24th day of April, 1849, and recorded the 15th of June, 1855. And lastly, a lease from Ballance to himself, dated the 1st day of December, 1855.

Appellee claims title under a deed of conveyance from Oakley to one McGinity, dated the 13th of June, 1855, and recorded the 15th day of the same month. Also a deed from McGinity to himself, dated the 1st day of August, 1857, but never recorded. It thus appears, that the deed from Oakley to McGinity was recorded before the deed from Oakley to Nowland.

To avoid the effect of the prior record of the deed to McGinity, appellant introduced evidence tending to shew that Ballance leased the lot to Sweeney, Ham & Co., and afterwards to Sweeney & Littleton, who owned a saw and planing mill, and a sash factory on a lot across a street and opposite the premises in controversy as early as in the year 1850 or 1851, and that they used the lot for the purpose of piling saw logs, lumber and other material in connection with the mill. And it is insisted that this was such possession as put McGinity, and all others dealing with the property, upon inquiry; and was notice equal to the record of Oakley's deed to Nowland.

Notice by possession of the premises, to be sufficient, must be of that open, visible character which, from its nature, is calculated to apprise the world that the property has been appropriated and is occupied; also who the occupant is; or from which the occupant may be readily ascertained; and it must be such a use and occupancy as the property is adapted to; and such possession, if calculated to give notice of the fact, is all that the law requires. Whatever may be the character of the occupancy or the improvement, it must still be exclusive. If only used and enjoyed in common with others, or with the public in general, it could not be regarded as hostile to other

persons claiming title; or as being made under claim of title. It must be of such a character as, in its nature, is calculated to arrest the attention, and put any other person claiming title upon inquiry. It may well be supposed that all men, before they purchase real estate, take the necessary precaution to learn its situation; and if found to be occupied, that they will institute the necessary inquiry to ascertain by whom, and in what right. In this case, there was evidence proper for the consideration of the jury to determine whether the stacking of lumber, and the piling of saw logs on this lot, in such quantities, and so continuously, as the evidence seems to show, was an open, visible and exclusive possession by Ballance's lessees. If it was, then it was notice to McGinity, and it was his duty to institute such inquiries as would have led him to a knowledge of the facts. If the jury had so found, the law would presume that he had made the inquiry and had learned the facts, as to who was in possession and under what title he claimed to hold the property.

In the case of *Ewing* v. *Burnett*, 11 Pet., 50, the Supreme Court of the United States went farther, perhaps, than would have been required under the facts in this case, to hold this a possession. In that case, it was held, that the claim of the exclusive right of digging and removing sand and gravel from a vacant and uninclosed lot, by a grantee of the land, by giving the privilege to some, and refusing it to others; and bringing suits for trespass against persons removing sand and gravel, without permission; and at different times making leases to various persons, for the purpose of taking gravel and sand therefrom, besides taking it for his own use as he pleased, constituted adverse possession. And in the case of *Rupert* v. *Mark*, 15 Ill., 540, this court held, that notice of a prior unrecorded deed, by a subsequent purchaser at the time he takes his conveyance, will defeat his title. That by such notice he is as effectually bound as if the prior conveyance had been recorded at the time of his purchase. It was also

held, that whatever is sufficient to put a purchaser upon inquiry, will operate as notice of the former conveyance; and that possession of the premises by the first purchaser is sufficient to put the subsequent purchaser on inquiry, as to the title under which it is occupied. And it was also held, that any facts which could have been ascertained by ordinary diligence, will be presumed to have come to his knowledge. The doctrine of such notice, as actual occupancy, being equal to the record of the deed, seems to be fully recognized and supported by authority, and it has been repeatedly acted upon by this court, and is now regarded as a settled rule in our jurisprudence.

The court below, at the instance of plaintiff, gave this, together with other instructions : " The mere piling of wood or lumber, or rails or offal upon a tract of land or lot, unaccompanied by any other act denoting ownership, is not such possession of the land or lot as would constitute notice to a *bona fide* purchaser of such tract of land or lot, unless such piling of wood or lumber should constitute, in the estimation of the jury, an open, visible and exclusive possession of the lot in the person piling such wood.or lumber." It is insisted that this instruction should not have been given. That these firms used the lot for the purpose of piling saw logs and of lumber to dry, and for sale, continuously, from the time of receiving the lease from Ballance, until the sale to appellant, there seems to be evidence in the record. There was evidence that Sweeney & Littleton leased to appellant, in 1854 or in 1855, who soon after erected upon it a finishing shop, and he was still in possession in 1863. And that appellant obtained possession from Ballance, under whom he always claimed possession.

The question then arises, whether the possession of Sweeney & Littleton was so open, visible, notorious and exclusive as to be calculated in its very nature, to inform persons in the vicinity, and those seeing the property, that some person had appropriated it, and was using and occupying it for his own use. Such an appropriation may be manifested in various

ways. It may be by enclosure, by cultivation, by the erection of buildings, or other improvements, or, in fact, by any use that clearly indicates its appropriation and actual use, by the person claiming to hold it. And these are all questions for the determination of the jury, under proper instructions, if asked. This instruction was in accordance with these principles, and the court committed no error in giving it; nor can we say that the finding of the jury is so manifestly against the weight of evidence that it should be set aside.

It is likewise objected, that the court erred in refusing to give a portion of the instructions asked by appellant. We are unable to say that error exists, for this reason, as he has failed to bring up those which were given in his favor. For aught that appears, those given may have stated the law of the case fully and correctly to the jury. Appellant alleges error, and he must show it. He has not brought all of the record of the court below into this court; and having failed to do so, we will not presume that if it was before us, it would show error in the record; but we must rather presume that the instructions, if here, would sustain the finding and the judgment. There being no error discovered in the record, the judgment of the court below must be affirmed.

*Judgment affirmed.*