ISAAC N. HARDIN *et al.*

*v.*

FERNANDO JONES.

1. CHANCERY — *bill to quiet title.* There are only two cases, under our law, in which a party may file a bill to quiet title, or to remove a cloud from the title to real property: first, when he is in possession of the lands; and, second, when he claims to be the owner, and the lands in controversy are unimproved and unoccupied.

2. The possession that gives jurisdiction in such cases must have been acquired in a lawful way. If obtained by violence, or by the use of unfair or corrupt means, a court of equity will not lend its aid.

3. POSSESSION — *when wrongful.* Possession of real estate obtained by buying off the tenant of another and entering the same is fraudulent, both in law and in fact, and such guilty party will not be permitted to make his wrongful conduct the foundation of equitable jurisdiction. Possession obtained by fraudulent means will, in equity at least, be treated as no possession.

APPEAL from the Circuit Court of Cook County; the Hon. E. S. WILLIAMS, Judge, presiding.

This bill was filed by Fernando Jones, in November, 1873, to quiet title to property described in the bill. It is alleged in the bill complainant was owner and claims title in fee to the premises by a chain of title from the government, and also that he has a title to the lands by virtue of the limitation laws of the State, as provided in sections 8 and 9 of the act entitled "Conveyances," and that he was in actual possession of the premises by a tenant. It is conceded the title to the lands from the government came to Daniel Elston, and the title complainant claims was acquired under a sheriff's deed made in 1841, on an execution sale under a judgment rendered against Elston in the Municipal Court of Chicago. The validity of that sale is challenged by defendants, who claim the property as heirs at law of John Holbrook, since deceased, to whom Elston conveyed it on January 1, 1839. The conveyance, however, was subsequent to the date of the judgment against Elston, who was then the owner of the property.

From November, 1870, to April, 1873, defendants had been in possession, and had inclosed the entire premises and made other valuable improvements. The premises had been let to Bonner, who occupied the same under a written lease from defendants until April, 1873, when, in consideration of $600 paid to him by some one, he surrendered the premises to a tenant of complainant. As soon as defendants ascertained their tenant had surrendered the premises, they commenced an action of forcible detainer against the occupying tenant to recover possession of the property, which they had lost, as they say, through the corruption of their tenant. That action was pending when this bill was filed. The object of the bill is to have defendants enjoined from further prosecuting the action of forcible detainer to recover possession of the property, and to have the title defendants claim declared invalid and set aside as a cloud upon the title complainant claims. The court below decreed according to the

prayer of the bill, and defendants bring the case to this court on appeal.

Messrs. DENT & BLACK, for the appellants.

Messrs. GOUDY, CHANDLER & SKINNER, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

No discussion of the merits of the titles the respective parties insist upon need be had at this time. It will be observed both parties claim the title to the land that was in Daniel Elston — that of complainant depending in part upon the validity of a sheriff's sale made in 1839, under an execution issued on a judgment against Elston, and defendants claim the same title as heirs at law of John Holbrook, to whom, in his life-time, Elston had conveyed the property. No question is made as to the fact of the possession of defendants from 1870 to 1873, nor that they had inclosed the premises and made other valuable improvements. As soon as it was discovered defendants' tenant had surrendered the premises to another party, an action of forcible detainer was at once commenced to dispossess him, and that action defendants were prosecuting when they were enjoined under the bill filed in this case to quiet the title to the property.

Whether defendants waived their right to insist in this court that the court below had no jurisdiction to hear this bill, for the reason there was a remedy at law in the action then pending, on account of the omission to make such objection in their pleading or in any other manner in the court below, is a question we need not pass upon, as there is another reason why the court did not have jurisdiction of the bill that is equally fatal to any decree in favor of complainant. There are only two cases, under our law, in which a party may file a bill to quiet title or to remove a cloud from the title to real property : first, when he is in possession of the lands ; and, second, when he claims to be the owner and the lands in controversy are unimproved and

unoccupied ; then, under our statute, he may file such bill. As the lands in this case are improved, of course complainant can not sustain his bill under the statute, and if it can be sustained at all, it must be because he was in possession when he exhibited his bill. But that possession that gives jurisdiction in such cases must be such as was acquired in a lawful way, for it can not be that equity will lend its aid to protect a possession wrested from another by violence or obtained by the use of any unfair or corrupt means. This precise question was passed upon by the court in *Comstock* v. *Henneberry*, 66 Ill. 212. The rule established in that case is, a party will not be permitted to take advantage of his own wrong, and where such party has obtained possession of lands in controversy fraudulently or forcibly, although in the actual possession, he will be treated in equity as out of possession so far as the jurisdiction of the court is concerned to hear and determine a bill to quiet title to the premises. His wrongful act can afford no foundation for equitable jurisdiction and relief.

The principle of the case cited is conclusive of the one at bar. The possession of defendants was notorious and exclusive, and was held by them for a period of several years, until their tenant was induced by a money consideration paid to him to surrender the premises. Some one corrupted the tenant of defendants, and it was in that way complainant obtained possession of the property, which it is insisted gives him a standing in a court of equity. On this branch of the case it is insisted complainant was no party to that transaction, nor never authorized the use of the means employed to corrupt the tenant of defendants and induce him to make a fraudulent surrender of the premises occupied by him. But it seems to us the evidence is sufficient to connect him with it, and especially in view of the fact it is shown he readily adopted what was done by seizing possession at once. All the negotiations in regard to the transaction seem to have been conducted by Van Etta, but complainant admits, in his testimony, he " knew before

Bonner left the premises that inducements were to be offered to him for the purpose of getting him out." It is true, complainant denies he ever paid any money directly or indirectly to Bonner to induce him to give up possession of the premises, yet he admits he paid Van Etta money in considerable sums, and it is in proof Van Etta paid Bonner money to induce him to leave. Van Etta had no sort of interest in the property, and what object could he have in buying off the tenant, unless it was in the interest of complainant, from whom he had received money? According to complainant's own testimony, a part of what he paid Van Etta was for his "services." It is not shown he had rendered complainant any "services," unless it was in conducting the negotiations with Bonner to get him off the lands, that complainant might place his own tenant in, which he did at the earliest possible moment. There can be no doubt that what Van Etta did about getting Bonner to surrender the premises was in the interest of complainant, and, having taken to himself the benefit of what was done, he must be held responsible for the manner of doing it. Possession of property obtained as the evidence shows this was, is fraudulent both in law and in fact, and such guilty party, as we have seen the law is, will not be permitted to make his wrongful conduct the foundation of equitable jurisdiction and relief in regard to it.

The decree will be reversed and bill dismissed.

*Decree reversed.*