LIZZIE HUGHES

*v.*

JOHN CARNE, Jr., *et al.*

*Filed at Ottawa January 22, 1891.*

1. SALE OF LAND FOR TAXES—*notice by the purchaser—requisites of service upon partners.* Where land was assessed in the name of Rees, Pierce & Co., and the affidavit of service of notice of the time of redemption showed that the affiant could not find any of the owners or parties interested in the land except "Rees, Pierce & Co.," and that affiant, as the agent of the purchaser at the tax sale, served the notice on Rees, Pierce & Co., by handing the same to and leaving it with L. H. Pierce,

it was *held*, that the service shown was insufficient, in failing to show that L. H. Pierce was a member of the firm, and a service on the other members of the firm.

2. Same—*affidavit—its requisites—parol evidence.* The affidavit made on application for a deed of land sold for taxes, to show a compliance with the law, must show upon its face all that is necessary to entitle the applicant to have the deed executed. Parol evidence is not admissible to supply omissions or defects in the affidavit, or to contradict matters therein stated.

3. Same—*estoppel to deny affidavit for a deed.* Where a party, on application for a tax deed, files his affidavit showing that a certain person is the owner of the land, he will be estopped from denying that such person was the owner at the time of making his affidavit.

4. The applicant for a tax deed can not swear to the ownership of a party in order to get a tax deed, and then deny his own sworn statement when the deed is attacked.

5. Cloud on title—*possession as a substitute for proof of ownership.* Where the complainant in a bill to remove a cloud on title to land shows that he is in the actual possession of the property, claiming to own the same in fee, at the time of beginning his suit, such possession and claim will be received as a substitute for actual proof of ownership.

6. Same—*bill to remove cloud—and for partition—in the same proceeding.* The Partition act permits clouds to be removed on bills for partition, thus allowing two kinds of relief in relation to two different subjects to be sought in the same proceeding.

7. Chancery—*supplemental bill—of its proper office.* It is a general rule, that when an original bill shows no ground of relief, it can not be aided by a supplemental bill setting up matters that have arisen since the filing of the original bill. But the rule has no application when the amended and supplemental bill may be treated as an original bill, as, when it seeks relief not sought in the prior bill, or introduces a new cause of action.

8. Statute of Frauds—*sale of land by an agent—authority to be in writing.* An agent has no authority to bind the owner of lots by a contract for their sale, unless he is "thereunto by him lawfully authorized in writing."

Appeal from the Circuit Court of Cook county; the Hon. O. H. Horton, Judge, presiding.

Mr. George Scoville, for the appellant:

The application is defective, in that it does not state that Carne was owner of the tax certificate when notices were given

or when the application was made, and said certificate had been formally assigned by him in blank, in pursuance of section 20 of the Revenue act, as appears by indorsement thereon. No presumptions are to be indulged in his favor. *Wisner* v. *Chamberlin,* 117 Ill. 568.

The application shows that lot 10 was taxed for 1879 in the name of Rees, Pierce & Co., and that notice was served on Pierce, only. The evidence introduced by complainant showed that Rees, Pierce & Co. was a firm, in 1879, composed of James H. Rees and Luther H. Pierce, co-partners. Defendant Carne attempted to show (which was objected to) that Rees died in 1880 or 1881. This evidence was clearly inadmissible. *Gage* v. *Mayer,* 117 Ill. 632; *Gage* v. *Reid,* 118 id. 35; *Gage* v. *Waterman,* 121 id. 115; *Gage* v. *Hervey,* 111 id. 305.

The application alleges that notice was served upon persons in possession, but does not give their names, date of service, or other particulars of such service. Facts must be stated— not conclusions. *Wallahan* v. *Ingersoll,* 117 Ill. 123; *Price* v. *England,* 109 id. 394; *Gage* v. *Waterman,* 121 id. 115.

It does not show lot 10 was vacant at any time, and fails to show any reason why notice was not served on all the members of the firm of Rees, Pierce & Co. *Taylor* v. *Wright,* 121 Ill. 455; *Gage* v. *Bailey,* 100 id. 530.

The application itself must set forth all the facts required to entitle the applicant to a deed. *Barnard* v. *Hoyt,* 63 Ill. 341; *Wisner* v. *Chamberlin,* 117 id. 568; *Gage* v. *Mayer,* id. 632; *Gage* v. *Bailey,* 100 id. 530; *Wilson* v. *McKenna,* 52 id. 43.

The rule *stricti juris* is applied to every step of the proceedings in obtaining a tax title. *Gage* v. *Mayer,* 117 Ill. 632; *Wisner* v. *Chamberlin,* id. 568.

The law did not require complainant to show full and perfect proof to set aside a cloud on title. Proof of possession is sufficient. *Gage* v. *Kaufman,* 133 U. S. 471.

Messrs. WILSON & MOORE, for the appellee Carne:

Mrs. Hughes was not the owner of the property, but held the legal title in trust for Elmira Stearns. She has not made proof which will entitle her to attack the tax deed. She must recover on the title she had when the original bill was filed. *Fahs* v. *Roberts,* 54 Ill. 192; Story's Eq. Pl. sec. 339.

A complainant can not support a bad title by acquiring another after the filing of the original bill. 2 Barb. Ch. Pr. 61.

Messrs. WILSON & MOORE, and Messrs. SCHUYLER & KREMER, for the appellant Stearns:

The contract was executed as required by the Statute of Frauds, but if not, the statute was not pleaded. *Gordon* v. *Reynolds,* 114 Ill. 126; *Mitchell* v. *King,* 77 id. 462; Browne on Statute of Frauds, sec. 499.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The original bill in this case was for the partition of land between tenants in common, and for the cancellation of a contract for the sale of the land, executed in the name of one of the co-tenants to the appellee, Elmira Stearns. It was filed on November 27, 1882, by Storm A. Becker, as one of the tenants in common, against the other tenants in common, and against said Stearns, and the appellee John Carne Jr. The only allegation in said bill having any reference to Carne is, that he "claims to have some interest in said land, which said interest, if any he has, is by way of purchase of said land at sale thereof for taxes and special assessments, and from any such interest your orator claims the right in behalf of himself and his co-tenants to redeem according to law." There was nothing in the prayer of the bill in relation to the interest of Carne as purchaser at a tax sale. The prayer was simply for partition, and that the contract of Stearns be cancelled. Carne was never served with process under the original bill, and

never appeared or answered it. While it was pending, and on January 31, 1883, he obtained a tax-deed conveying to him lot 10, one of the lots in controversy.

The only defendant to the original bill, who was served, was Elmira Stearns. Nothing seems to have been done in the cause for about five years, except that, on June 19, 1884, it was stricken from the docket for want of prosecution, was reinstated on June 25, 1885; and a motion made on June 19, 1886, to rescind the order reinstating it was overruled on June 20, 1887. On the latter date the present appellant, Lizzie Hughes, came into court and suggested the death of the complainant, Becker, and asked to be substituted as complainant in his stead, and obtained leave to file an amended and supplemental bill.

Accordingly the appellant, Hughes, on July 6, 1887, filed her amended and supplemental bill, alleging that she had purchased the undivided one half interest of the said Becker in the two lots, 10 and 11, sought to be partitioned; that, in his lifetime and on August 21, 1884, Becker had, at her request and for her benefit, executed a deed of said undivided half to one Mary H. Bates, which deed was filed for record September 9, 1884; that Mary H. Bates conveyed the said half to appellant on April 22, 1886; that she, the said Hughes, was the owner seized in fee of one undivided half of said lots, and that George L. Weed and Henry F. Weed, as the devisees and only children of their deceased father, William H. Weed, owned the other undivided half, subject to the dower of their mother, M. Louisa Weed. The amended and supplemental bill makes one Jacob C. Magill and Stearns, Carne and the Weeds defendants thereto; it sets up the contract with Stearns and states the grounds upon which it is claimed that said contract ought to be cancelled; it also sets up the execution of the tax deed on January 31, 1883, to Carne, and states the reasons why said deed is claimed to be invalid and void; it prays for partition and the cancellation of the contract as was done by

Becker in the original bill, and also prays for the removal of the tax-deed as a cloud upon the title. Said defendants answered the amended and supplemental bill, and the Weeds and Stearns filed cross-bills.

The controversy before us, as the case is now presented, is not between the appellant and the Weeds, but between appellant and Carne as to the validity of the tax-deed and the right of appellant to ask for its removal as a cloud, and between appellant and Stearns as to the validity of the contract and the right of the appellee, Stearns, to enforce it.

*First,* as to the tax-deed. Many reasons are urged against its validity. We think that one of these is sufficient to set it aside without stopping to consider the rest. It appears, from the affidavits filed with the county clerk to procure the issuance of the deed, that the lot was taxed in the name of Rees, Pierce & Co. Section 216 of the Revenue law provides, that the notice therein specified shall be served upon "the person in whose name the same was taxed or specially assessed, if upon diligent inquiry he or she can be found in the county." One of the affidavits states, that the affiant "could not find any of the owners or parties interested in said lot, in said county, *except* Rees, Pierce & Co." They, therefore, were found. The only proof of service upon them is the affidavit of one Cross, who swore that, as the agent of Carne, he served the notice "on Rees, Pierce & Co. by handing same to and leaving it with L. H. Pierce."

There is no allegation in any of the affidavits, that L. H. Pierce was a member of the firm of Rees, Pierce & Co. But if there had been such allegation, proof of service upon one member would not have been evidence of service upon the other member or members. Where property was assessed in the name of Reid & Sherwin, service on Sherwin was held not to be "good service as to Reid." (*Gage et al.* v. *Reid et al.* 118 Ill. 35.)

Appellee, Carne, sought to show by oral testimony on the trial, that the firm of Rees, Pierce & Co. had been composed of James H. Rees and L. H. Pierce and no other persons, and that Rees was dead at the time of the service of the notice. This was not allowable. The affidavit, presented upon the application for the deed, must show upon its face all that is necessary to entitle the applicant to have the deed executed. The affidavit must state particularly the facts relied upon as a compliance with the law. (Sec. 217, chap. 120, Rev. Stat; *Gage* v. *Hervey,* 111 Ill. 305; *Davis* v. *Gossnell,* 113 id. 121; *Price* v. *England,* 109 id. 394.) We have held in *Gage* v. *Mayer,* 117 Ill. 632, that parol evidence cannot be introduced to supply defects or omissions in the affidavit, and that, if the affidavit does not contain the facts necessary to show compliance, "the deed is unauthorized and nugatory, regardless of what the real facts may be, or what may be proved." So far as is shown upon the face of the affidavits in the present case, there was no service upon the persons in whose name the property was taxed, but upon another and entirely different person. L. H. Pierce was not Rees, Pierce & Co.

But it is claimed on the part of the appellee, Carne, that the appellant, the complainant in the amended and supplemental bill, was in no position to ask for the removal of the tax deed as a cloud, upon the alleged ground that she did not show herself to be the owner of the lot. The amended and supplemental bill alleges that the complainant Hughes was in possession of the property; and the proof shows that she took possession thereof in September and October, 1884, for the benefit of herself and her co-tenants, and fenced the same and built green-houses thereon at a cost of about $5000.00. Where the complainant in a bill to remove a cloud, shows that he is in the actual possession of the property claiming to own it in fee at the time of beginning his suit, such possession and claim will be received as a substitute for actual proof of owner-

ship.   (*Gage* v. *Hervey, supra; Barger* v. *Hobbs,* 67 Ill. 592;
*Keith* v. *Keith,* 104 id. 397; *McLean* v. *Farden,* 61 id. 106).

It is claimed, however, that, inasmuch as appellant acquired
her title and possession after the filing of the original bill by
Becker, she cannot set up such possession as a ground of re-
covery in her supplemental bill.   It is "a general rule that,
where an original bill shows no ground of relief, it cannot be
aided by a supplemental bill setting up matters that have
arisen since the filing of the original bill."   (*Fahs* v. *Roberts,*
54 Ill. 192).   But this rule has no application to the present
case, for the reason that the amended and supplemental bill
here is an original bill so far as its allegations and prayer have
reference to the invalidity of the tax deed and the removal
thereof as a cloud.   The tax deed itself was not issued until
after the filing of the original bill.   In the latter, no tax-deed
was referred to, or alleged to be invalid, or charged to be a
cloud, nor was the removal of a tax-deed as a cloud asked for,
nor was any relief sought as against Carne.   All these matters
were set up for the first time in the amended and supple-
mental bill.

It is conceded, that, if the lots had been vacant when the
original bill was filed, and Becker had therein stated the
grounds upon which the tax deed was alleged to be invalid,
and had asked for its removal as a cloud, his grantee could
not thereafter acquire a possession that could be set up by her
in a supplemental bill as an aid to the title obtained from
Becker, or as a substitute for proof of ownership.   But the
original bill merely set up such a title going back to a common
source, as was necessary to secure a partition and a cancella-
tion of the Stearns contract.   The amended and supplemental
bill did not attempt to aid that title by new matters, but it
introduced a new cause of action and asked for new relief, and
its allegations as to title were in support of such new cause of
action and such new relief, and not in aid of the old matters
alleged in the original bill.

The partition Act permits clouds to be removed in bills for partition. It thus allows two kinds of relief in relation to two different subjects to be sought in the same proceeding. Such a proceeding stands upon a different footing from one in which the only ground for relief is a single cause of action. One of the reasons for the rule contended for is, that it compels the defendant to adopt a new line of defense. It has been said, that it is inequitable to compel a defendant, who has been contending against the claim set up in the original bill, to suffer defeat by reason of a supplemental bill "based upon grounds having no connection with the original cause of action and lending it no support." (*Fahs* v. *Roberts, supra*). But here the defendant, Carne, was never served with process until July 6, 1887, the day on which the amended and supplemental bill was filed. The cause of action set up in the latter bill was the only cause of action in the case, which he had ever been called upon to defend; and the Hughes bill was an original one so far as he was concerned. (*Hallorn* v. *Trum*, 125 Ill. 247.)

It is to be noted that, in the affidavit of the defendant, Carne, and in the affidavits accompanying the same and made a part thereof, which he presented to the county clerk when he applied for his tax deed, he mentions Storm A. Becker as owner of the lot now in controversy. The law required him to serve a notice upon the owner, or to notify such owner by publication. He published a notice addressed to Becker as owner. He rests the validity of his tax deed upon the sufficiency of this notice and of these affidavits containing an admission of Becker's ownership. Appellant has unquestionably acquired the ownership, which is thus admitted to have been in Becker when Carne made his affidavit. The latter is estopped from denying that Becker was owner at that time. The applicant for a tax-deed cannot swear to the ownership of a party in order to get his deed, and then deny his own sworn statement when the deed is attacked.

We are of the opinion that the complainant made such proof of title as entitled her to maintain her bill to set aside the tax deed, and that said tax deed should have been declared invalid. The decree of the Circuit Court dismissing the bills and cross-bills as to Carne is, therefore, reversed.

*Second*, we think that the Circuit Court decided correctly as to all the other matters involved, and in holding that the appellee, Stearns, was not entitled to a performance of the contract for the purchase of lots 10 & 11, and in dismissing her cross-bill. In these respects its decree is affirmed.

The contract is dated January 26, 1880, and signed by Conger & Gorton, as agents for Storm A. Becker, and by Elmira Stearns. It recites the payment of $50.00 by Stearns on account of cash payment on the purchase of said lots, the amount of the purchase being $2000.00, payable $500.00 in cash, $500.00 on or before one year, $500.00 on or before two years, and $500.00 on or before three years, etc. Elmira Stearns was the mother-in-law of Magill. The $50.00 was paid by Magill, and the evidence tends to show that Magill was himself the purchaser in the name of Stearns. If he was not the purchaser, he acted as the agent of Stearns and in her interest in the negotiations. Neither of them ever paid anything more than the $50.00. It is alleged in the cross-bill of Stearns that Magill had been employed by Conger & Gorton to obtain a purchaser for said lots. It would thus appear, that he acted as agent for both sides, for both seller and purchaser. He wrote the contract and recorded it on January 31, 1880.

The contract is for the purchase of the whole of lots 10 and 11. Becker only owned an undivided one half of them, and George L. and Henry F. Weed owned the other undivided half. The Weeds declined to join in the sale. They never agreed in writing or orally to sell their half. They never authorized Conger & Gorton orally or in writing to make a contract for the sale of their interest. Magill knew, before the contract was made, that the Weeds owned one half. He had

sold two other lots—26 and 27—for Becker and the Weeds. Conger & Gorton never saw Mrs. Stearns. Their dealings were with Magill. They told him that the sale was made upon condition that the Weed interest could be obtained. Upon failure to obtain it they tendered back to Magill his $50.00, but he refused to receive it. They once offered to deed him the one half interest owned by Becker, but he refused it saying that he was entitled to a deed for the whole. There is nothing in the conduct of Magill which commends it to the favorable consideration of a chancellor. The contract names Becker only, and not his heirs or assigns.

Under the second section of the Statute of Frauds Conger & Gorton had no authority to bind Becker by a contract for the sale of these lots unless they had been "thereunto by him lawfully authorized in writing." He never gave them any authority in writing to make a contract for the sale of the whole of the lots or for the sale of his own one half thereof. Mr. Gorton swears that he never had any correspondence with Storm A. Becker. He had some correspondence with Becker's son, but there is no evidence that the son had any authority in writing to sell the lots for his father, or to make a contract for their sale.

The decree herein requires the complainant below to pay to Mrs. Stearns the $50.00 paid upon the contract. In our opinion this is all which justice and equity require her to do.

The decree of the Circuit Court is reversed so far as it is here held to be erroneous, and the cause is remanded to that court with directions to enter a decree in accordance with the views herein expressed.

*Decree reversed in part and in part affirmed.*