(No. 18425.—Reversed and remanded; No. 18428.—Decree reversed.)

GEORGE W. PLENDERLEITH, Appellee, *vs.* JACOB GLOS *et al.* Appellants.

*Opinion filed February 24, 1928—Rehearing denied April 10, 1928.*

1. TAX DEEDS—*what proof of title necessary to remove tax deed as cloud.* If complainant in a bill in equity to remove a tax deed as a cloud on his title is in possession under claim of ownership he need not prove title back to its source nor with the same strictness as in an action of ejectment, and proof of possession under a deed constitutes *prima facie* proof of title; but proof of a deed from a third person to the complainant, without proof of possession, is not sufficient to establish a *prima facie* title.

2. SAME—*complainant taking possession by force is not entitled to have tax deeds removed in equity.* Proof that the complainant or his agent removed a fence erected by tax title holders, ordered the latter's employees off the premises and erected a fence of his own does not entitle him to have the tax deeds removed as a cloud upon his title where his only proof of title is a quit-claim deed from a third person, even though he remained in peaceable possession for a year thereafter, as a complainant is not permitted to lay a foundation for a bill in equity by unlawfully disturbing the possession of another.

APPEALS from the Circuit Court of DuPage county; the Hons. F. W. SHEPHERD and WILLIAM J. FULTON, Judges, presiding.

JOHN R. O'CONNOR, ALBEN F. BATES, and STEPHEN D. MONAHAN, for appellants.

MECARTNEY & DUFT, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

On June 3, 1926, appellee filed in the circuit court of DuPage county a bill seeking to set aside four tax deeds issued to appellants, Jacob Glos and Albert H. Glos. The bill alleges that the complainant is owner in fee simple of

lots 64 to 75, both inclusive, in block 2, and lots 8 to 12 in block 3, in Stough's Second addition to Hinsdale. Upon the hearing the bill was dismissed as to lots 67, 68 and 69 in block 2. The bill alleges that complainant is in possession of all the real estate described and that the four tax deeds thereon had been issued to Jacob Glos, and that Albert H. Glos had some interest in the tax titles which he obtained from Jacob Glos. The bill alleges that the tax deeds are void, sets out various grounds of such invalidity, and prays that the same be set aside on reimbursement to the holders thereof as required by law. Appellants filed their answer, denying lawful possession in appellee and alleging that they were owners of the premises. A decree was entered on a hearing, finding appellee was owner of the premises and in possession; that the tax deeds were void, and that the same be set aside on condition that the complainant reimburse appellants in the sum of $2475 within thirty days, and directing that the decree stand vacated on failure of the complainant to pay such reimbursement within the time specified. Appellants prayed an appeal from this decree and were allowed forty days in which to file their appeal bond. Thirty-five days after the entry of judgment, the reimbursement not having been deposited with the clerk or paid to appellants, they filed a petition to vacate the decree and to withdraw their appeal bond. On a hearing this petition was denied, and Jacob and Albert H. Glos appealed to this court. That is case No. 18428. It has been consolidated for hearing here with this case, No. 18425. On the hearing of this case appellee offered evidence of title by quit-claim deed to him. His grantor was not shown to be in possession of the property and the possession of appellee was shown by evidence that on March 31, 1925, he had fenced the premises. Appellants offered proof of having had previous possession of the premises by fencing the same and that appellee destroyed their fence and erected one of his own. It was argued on the hearing

in the circuit court that the possession of appellee was se-
cured illegally and unlawfully and that therefore he has
no standing in a court of equity. The chancellor, however,
found to the contrary, and this presents the first ques-
tion here.

It appears from the evidence that appellee on March 26,
1925, recorded a quit-claim deed to him dated March 24,
1925. Thereafter, in 1926, he paid the current taxes and
special assessments on the property. He testified that on
March 26, 1925, he visited the property and that the same
was vacant and unoccupied, and that on March 31 he fenced
the lots, burned off the grass and put up a sign forbidding
trespass. On cross-examination he was asked if he knew
of anybody removing a fence from the property before he
took possession and built his fence, and whether he saw
any evidence when he fenced the property that other per-
sons had been in possession of it and that a fence had been
constructed there recently which was removed, and he re-
plied that he did. Appellee's witness W. P. Rafferty testi-
fied that he helped appellee construct the fence around the
premises on March 31. He was asked if at the time he con-
structed the fence he saw any evidence of any other fence
there, and he replied, "Not at that time." He stated on
cross-examination, however, that he saw evidence of a prior
fence on the property the day before they fenced it; that
he did not destroy the fence or remove it; that he saw posts
in the ground and wire partly around the property involved
in this case. He was later called as a witness on behalf of
appellants and was asked if he had removed any part of
the fence that was on the property, and he said that at ap-
pellee's suggestion he had cut some of the wires of the
fence on the premises and had previously ordered two men
off the premises whom he found there. He testified he did
not remove any of the posts and did not know who did
remove them. He stated that he had instructions from
Plenderleith to see that they were removed. He also tes-

tified that he knew the man named Arnold, who stated that he was acting for Jacob Glos in building the fence.

Appellants showed by two witnesses, Dietrich Arnold and Frank Timke, that on March 30 the property was vacant and unoccupied and that on that day they built a fence of steel posts and wire around lots 64 to 75 in block 2 and lots 8 to 12 in block 3. It appears that block 3 is on the west side and block 2 is on the east side of Adams street, in the village of Hinsdale. They testified that they drove down steel posts and stretched two wires around each of these premises; that the witness Rafferty came and told them to leave the premises, but that at that time the fence had been built and they had finished their work. They testified, also, that on the property in block 3 they left an opening in the fence in order that a woman who lived on a near by lot might have access to the lots for the purpose of hanging up her laundry.

Appellants claim that appellee took forcible and unlawful possession of the property on March 31, and that therefore he did not have, when he filed his bill, the character of possession which is required to sustain a bill in equity for removal of tax deeds as clouds on title. The basis of the right to maintain a bill in equity to set aside a tax deed as a cloud on title is proof of title to the premises in the complainant. Unless such proof is made the complainant cannot be heard to complain that there was a cloud on the title or to ask to have it removed. Proof of title is essential to the relief sought by appellee here. (*McGowan* v. *Glos*, 258 Ill. 217; *Judson* v. *Glos*, 249 id. 82.) The removal of tax deeds as clouds on title is permitted in two classes of cases under our law. The first is when the complainant is in possession of the lands under claim of ownership, and the second is when he claims to be the owner and the lands are unimproved and unoccupied. (*Hardin* v. *Jones*, 86 Ill. 313; *Comstock* v. *Henneberry*, 66 id. 212.) It has generally been held in such cases that one who is in possession un-

329—25

der claim of ownership need not prove his title back to its source. The complainant in such a bill is not required to prove title with the same strictness as in an action of ejectment, but where he is in lawful possession, claiming in good faith to be the owner under a deed conveying the property to him, such possession and claim will be received as a substitute for proof of actual ownership. (*Hughes* v. *Carne,* 135 Ill. 519; *Gage* v. *Hervey,* 111 id. 305; *Keith* v. *Keith,* 104 id. 397; *Barger* v. *Hobbs,* 67 id. 592.) Such proof constitutes *prima facie* proof of title in the complainant. (*Towle* v. *Quante,* 246 Ill. 568.) It has frequently been held that a deed from a third person to the complainant without proof of possession by the latter or his grantor or further proof of title in the complainant is not sufficient to establish a *prima facie* title. *Ruppe* v. *Glos,* 243 Ill. 414; *Metropolitan Elevated Railway Co.* v. *Eschner,* 232 id. 210; *Hewes* v. *Glos,* 170 id. 436.

Appellee testified, and it is not denied, that from the time he built the fence around the premises in question on March 31, 1925, until June 3, 1926, when he filed his bill, he had kept up the fences around these tracts and had been in peaceable possession. It is contended, however, most earnestly, that his possession was in its inception unlawful, and that therefore he does not come into equity with clean hands. We are of the opinion that the record in this case by the greater weight of the evidence clearly shows that prior to the building of the fence around these premises by appellee appellants had constructed a fence and were in possession, and that appellee by his agent entered upon the premises and destroyed the fence and built a fence of his own. It is fundamental in cases of this character that a complainant will not be permitted to lay a foundation for a bill in equity by unlawfully invading the possession of another. Equitable rights cannot be acquired in that way. (*Gage* v. *Hampton,* 127 Ill. 87; *Hardin* v. *Jones, supra; Comstock* v. *Henneberry, supra.*) If possession is

obtained by violence or by use of unfair or corrupt means a court of equity will not lend its aid. When appellee saw the property had been reduced to possession by another by enclosing it with a fence he had no right to interfere. His entry was therefore that of a wrongdoer—he was a trespasser. (*Lee* v. *Town of Mound Station,* 118 Ill. 304.) The fact that he had a quit-claim deed did not, in equity, entitle him to go upon the premises and destroy the fence of one whom he found to be in possession. His remedy was by ejectment, where the title could be settled in a court of law. It is a familiar maxim of equity that no one who comes into that court shall be permitted to take advantage of his own wrong, and in this case, as appellee wrongfully took possession of the property and destroyed the fence erected by appellants, he is to be treated in equity as being out of possession, and therefore lacking one of the elements necessary to entitle him to the relief prayed in his bill. When he sent his agent upon these lots to build a fence there was already on the premises a fence sufficient to inform all persons that the premises were appropriated. (*Truesdale* v. *Ford,* 37 Ill. 210.) In *Gage* v. *Hampton, supra,* Hampton took possession of the property involved and destroyed the remaining portion of a fence which had been previously erected by Gage but which he testified was then gone on two sides of the lots. Hampton in the place of such fence built one of his own. It was held that such act conferred no rights upon him; that when his agent visited the property, although some of the fence had been torn down, there was enough there to notify him that the property had been reduced to possession by another, and that when he destroyed the remainder of the fence and built another, and thereby took possession of the property, he did so unlawfully and his possession was not such as to entitle him to relief in equity. We are of the opinion that such must be the holding in this case and that the chancellor erred in granting the relief prayed.

Questions are also raised as to the amount of the reimbursement decreed, but as appellee was not entitled to relief in equity it is not necessary to consider those questions.

The decree is reversed and the cause is remanded in No. 18425, with directions to dismiss the bill for want of equity. Since the petition filed in No. 18428 is to vacate the decree entered in case No. 18425 and the appeal in that case is from the order denying that petition, the decree in case No. 18428, under the view taken by this court in case No. 18425, necessarily falls, and it will be reversed.

> *Decree in No. 18425 reversed and remanded,*
> *with directions.*
> *Decree in No. 18428 reversed.*