*In re* APPLICATION OF HAMILTON COUNTY TREASURER.—(HUGH WILSON, Petitioner and Respondent-Appellee, *v.* MARY GHOLSON, Deceased, *et al.*, Respondents—(LEE ROY McKINNIES, Intervening Petitioner-Appellant).)

Fifth District    No. 80-226

Opinion filed May 12, 1981.

Alan C. Downen, of McLeansboro, for appellant.

Frank Bonan, of Bonan and Bonan, Chartered, of McLeansboro, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Lee Roy McKinnies appeals from the judgment of the Circuit Court of Hamilton County dismissing his petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) to set aside a tax deed to Hugh Wilson. The only question on appeal is whether the petition was sufficient to require a hearing on the merits.

On November 3, 1975, the county collector sold a parcel of land in Hamilton County for delinquent 1974 general real estate taxes. Wilson purchased the parcel and received a certificate of purchase dated November 3, 1975. The certificate listed Clyde Gholson as the party to whom taxes were assessed.

Wilson filed a petition for tax deed on July 1, 1977. He alleged, *inter alia*, that the property had been owned by Mary Gholson, who was deceased; that her five children, Clyde Gholson, Frank Gholson, Barney Hudgins, Arney Hudgins and Grace Hudgins Reeves, were all believed to be deceased and that their heirs and devisees were unknown; that any parties in interest could not be ascertained upon diligent inquiry; that the real estate was not occupied; and that Wilson had published notice of the tax sale and right to redeem as required by section 263 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 744) as well as notice of the petition for tax deed (Ill. Rev. Stat. 1979, ch. 120, par. 747).

It appears that certain heirs of Mary Gholson residing in Ontario, Canada, conveyed their interest in the property to Wilson for a consideration of $4,000 by quitclaim deed dated August 22, 1978.

At a hearing on October 6, 1978, Wilson testified that he had taken "* * * the necessary steps to inform and advise all known and unknown heirs of the decedent Mary Gholson * * *." However, aside from the heirs who had quitclaimed their interest to him, he stated that he did not know of anyone that might have any interest but had not been notified. He also testified that a man was farming the property, but that he did not know to whom the man paid rent. Judgment for issuance of the tax deed was entered on October 17, 1978.

McKinnies filed his section 72 petition to set aside the tax deed on September 12, 1979. He asserted that Wilson had failed to make diligent inquiry to find and personally serve interested parties as required by section 263 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 744). The petition concluded that Wilson had perpetrated a fraud on the court by falsely informing the court that he had taken all necessary steps to inform and advise the heirs. In particular, McKinnies alleged that Wilson lived next to the subject property and had so lived for years; that

Wilson was personally acquainted with John Harley Allen, who was the tenant farmer that Wilson himself had testified was farming the property at the time of the hearing on the tax deed petition; that neither Allen nor any other interested parties were personally served with notice of the tax sale; that Allen could have provided information concerning the owners but was not contacted; that McKinnies' father, Charles McKinnies, who was also a personal acquaintance of Wilson, had farmed the property during and prior to 1976 but had not been contacted concerning the identity of the owners; that David Underwood, the attorney for the heirs who had quitclaimed their interest to Wilson, had on simple inquiry ascertained the identity of two other owners, the widow of Barney Hudgins (McKinnies' grantor) and the son of Grace Hudgins Reeves; but that Wilson had never inquired of David Underwood whether he had located any other owners.

In a supporting affidavit, McKinnies stated that he and his father were presently farming the property; that the widow of Barney Hudgins, an heir of Mary Gholson, had quitclaimed to McKinnies her interest in the property; that at the time of this conveyance, neither McKinnies nor his grantor knew that the tax deed had issued; and that upon discovering this fact, McKinnies had immediately initiated proceedings to set the tax deed aside. Attached to the affidavit is a quitclaim deed dated August 8, 1979, from Virginia Ruth Hudgins to McKinnies. The printed form language on the deed form recites a consideration of one dollar.

On motion of Wilson, the trial court dismissed the petition to set aside the tax deed, with leave granted to file an amended petition. On November 16, 1979, McKinnies filed an amended petition further alleging that David Underwood had personally informed Wilson's attorney that he (Underwood) had located additional heirs including McKinnies' grantor, but that the record did not reflect that those heirs were personally served or contacted by Wilson.

Attached to the amended petition was an additional supporting affidavit of William Ingram Hudgins, son of McKinnies' grantor. He stated that Mary Gholson had been his grandmother; that his father, Barney Hudgins, had died intestate leaving his widow and children as heirs at law; that to the best of the affiant's knowledge and belief his father died owning an interest in the property; that by quitclaim deed dated August 8, 1979, his mother conveyed her interest in the property to McKinnies, and that to the best of the affiant's knowledge and belief, none of his father's heirs had been notified of the tax deed proceedings.

In his motion to dismiss the amended section 72 petition, Wilson maintained, among other things, that the section 72 petition was conclusory; that, in granting the tax deed, the court conclusively found that all required notices had been given; that section 72 was not intended to

relieve a party of his own negligence; that McKinnies failed to allege facts to establish his freedom from negligence; that the petition was filed a year after the tax deed was recorded; and that the amended petition revealed that McKinnies and counsel were parties to a fraudulent conveyance to place a cloud on the title conveyed by the tax deed and to create a slander of title. Attached to the motion are the tax deed bearing a recorder's stamp dated October 17, 1978, and the deed from the Canadian heirs of Mary Gholson quitclaiming their interests to Wilson bearing a recorder's stamp dated October 6, 1978.

Without stating the grounds for its decision, the court granted the motion to dismiss and entered judgment for Wilson.

■■ Section 266 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 747) specifically provides that a section 72 petition may be employed to challenge an order directing issuance of a tax deed in the same manner, upon the same grounds, and to the same extent as in other types of proceedings. In general, a section 72 petition enables a party to bring before the court matters of fact which, if known to the court at the time a judgment was entered, would have prevented its rendition. (*Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 236 N.E.2d 719.) However, such a petition is not intended to relieve a party from the consequences of his own mistake and negligence. (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 165 N.E.2d 294.) He must establish that he was diligent in bringing the petition and that through no fault or negligence of his own the error of fact or existence of a valid defense was not made to appear to the trial court. *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 357 N.E.2d 518.

■■■ Notice by publication in tax deed proceedings is authorized only to those owners and interested parties who upon diligent inquiry cannot be found and personally served. (Ill. Rev. Stat. 1979, ch. 120, pars. 744, 747.) A section 72 petitioner has the burden of alleging and proving that a tax deed has been procured by fraud, an act calculated to deceive accompanied by a wrongful intent. (*Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31, 344 N.E.2d 468.) Unless a failure to serve personally an interested party is shown to be fraudulent, a petition to set aside the tax deed will fail. (*Urban v. Lois, Inc.* (1963), 29 Ill. 2d 542, 194 N.E.2d 294.) However, a tax deed may be set aside on a showing of a scheme to circumvent notice to the true owners (*Shockley v. Good* (1958), 13 Ill. 2d 298, 148 N.E.2d 763), or a withholding of information from the court to evidence a wrongful intent on the part of the tax purchaser, *In re Application of County Treasurer* (1978), 67 Ill. App. 3d 122, 384 N.E.2d 729.

In their briefs, the parties have focused on the issue of whether fraud was sufficiently alleged. If this were the only issue, we would have little difficulty concluding that the trial court should have provided an eviden-

tiary hearing on the petition, although at this stage we of course would intimate no decision on the merits.

■■ More serious difficulties are raised by the time of and circumstances surrounding the creation of McKinnies' alleged interest in the property. McKinnies allegedly acquired a fractional heirship interest by quitclaim, apparently for a nominal consideration, and now seems to assert that this interest allowed him in good faith to enter upon and farm the subject property. Parties who sought to attack tax title through a suit in equity to quiet or remove a cloud from their title apparently were required to plead and prove sufficient title in themselves and the vacancy of the property or their own possession in good faith. (*Rabus v. Calcari* (1959), 16 Ill. 2d 99, 156 N.E.2d 567; *Plenderleith v. Glos* (1928), 329 Ill. 382, 160 N.E. 745; *McGowan v. Glos* (1913), 258 Ill. 217, 101 N.E. 604.) However, the current provision for the bringing of a section 72 petition to set aside a tax deed has been held to preclude an attack on tax title through an equitable proceeding to quiet title. (Ill. Rev. Stat. 1979, ch. 120, par. 747; *Buschmann v. Walsh* (1970), 120 Ill. App. 2d 242, 256 N.E.2d 882; *McCann v. Laster* (1974), 19 Ill. App. 3d 407, 311 N.E.2d 743.) Therefore, the precedents involving suits to quiet or remove a cloud on title may not directly control a section 72 proceeding. Nevertheless, we think it apparent that a section 72 petitioner must have some bona fide title or interest in the property for him to have standing to attack the tax deed.

A fractional heirship interest such as that allegedly held by McKinnies' grantor would seem sufficient to support a section 72 petition to set aside a tax deed. However, the tax deed in this case was issued and recorded almost a year prior to the conveyance of McKinnies' alleged interest. Section 270 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 751) provides that a tax deed constitutes prima facie evidence of various facts in subsequent controversies. This provision does not prevent a party in interest who is fraudulently deprived of notice at the time of the tax deed proceedings from attacking the tax deed, assuming that this interested party can establish the elements of diligence and freedom from negligence required to bring a section 72 petition. However, a question remains of whether, as a matter of law, these elements can be established by a petitioner whose alleged interest was not acquired until after the recording of the tax deed. See *Miller v. Cook* (1890), 135 Ill. 190, 203, 25 N.E. 756, 759-60.

*In re Application of Smith* (1964), 49 Ill. App. 2d 189, 199 N.E.2d 420, involved review of a dismissal of a section 72 petition to set aside a tax deed where the petitioner had acquired title after issuance of the tax deed. However, the appellate court merely remanded for a hearing on the petitioner's allegations of fraud, without discussion of any issue regarding the petitioner's standing or diligence.

In *Southern Illinois Power Cooperative v. Lowery* (1967), 79 Ill. App. 2d 180, 224 N.E.2d 32, the section 72 petitioner acquired its interest in the subject property 18 months after a tax deed had issued. Aside from finding an absence of fraud, *Lowery* held that the petition was insufficient in failing to allege facts to show that the petitioner's grantor was free of negligence in failing to appear or make timely objection to the issuance of the tax deed. In fact, undisputed evidence showed that the petitioner's grantor was told of the tax deed proceedings but simply chose not to object. The petitioner was charged with knowledge not only of record title but of the entire tax deed proceedings. As a purchaser with notice, the petitioner could be in no better position than its grantor. *Lowery* also questioned the petitioner's diligence, where it had waited three years from the acquisition of its interest to file the petition to set aside the tax deed.

While holding that the petition insufficiently alleged freedom from negligence in the petitioner's grantor, *Lowery* suggests the record notice of the tax deed and associated proceedings is not an absolute legal bar to a section 72 petition by a subsequent grantee. Here, unlike *Lowery*, the petition and supporting affidavits assert a lack of actual notice to the petitioner's grantor of the tax deed proceedings, and there is nothing of record to refute this assertion. Also, unlike *Lowery*, the petition here was filed very shortly after the conveyance to the petitioner.

While the assertions in Wilson's "motion to dismiss" may well be meritorious and borne out by the evidence at a hearing on the petition, the fact remains that the thrust of the motion is to answer the allegations of the petition rather than to advance a basis for finding the petition legally insufficient. On the record before us, and in light of the uncertainty of prior precedent, we hold that it was error to dismiss the petition without an evidentiary hearing. We therefore remand to the Circuit Court of Hamilton County for a hearing to allow a determination of whether McKinnies can carry his burden of establishing the material allegations of his petition.

Reversed and remanded.

KASSERMAN, P. J., and HARRISON, J., concur.