2026 IL App (1st) 250819-U
No. 1-25-0819

SIXTH DIVISION
May 22, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION OF THE COUNTY TREASURER AND EX-OFFICIO COUNTY COLLECTOR OF COOK COUNTY, ILLINOIS, FOR ORDER OF JUDGMENT AND SALE AGAINST REAL ESTATE RETURNED DELINQUENT FOR THE NON-PAYMENT OF GENERAL TAXES FOR THREE OR MORE YEARS | ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County.<br><br><br><br><br><br>No. 22 COTD 000490 |
| (County of Cook, d/b/a Cook County Land Bank Authority, | ) ) ) | The Honorable Mary S. Trew, |
| Petitioner-Appellee, | ) ) | Judge, presiding. |
| v. | ) ) | |
| Marwan A. Fateen, | ) ) | |
| Respondent-Appellant). | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Gamrath concurred in the judgment.


**ORDER**

*Held*: We affirm the dismissal of appellant's petitions collaterally attacking a tax deed issued to the appellee, where appellant lacked an interest in the subject property

sufficient to give him standing to collaterally challenge the tax deed under section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2022).

¶ 1    Marwan Fateen appeals from the circuit court orders dismissing his petitions under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)) seeking to vacate the September 2022 issuance of a tax deed issued in favor of appellee County of Cook, d/b/a Cook County Land Bank Authority (CCLBA). For the following reasons, we affirm.

¶ 2                                I. BACKGROUND

¶ 3    This appeal arises from the tax sale of a two-unit residential property located at 7541 S. Dante Avenue in Chicago (the property). The record indicates that the property was formerly owned by William L. Winston and Arcora Winston, as tenants by the entirety. The tax sale was based on the failure to pay property taxes for years 2007 through 2016. The record suggests that William and Acora Winston are both deceased, although it does not specify dates of death.

¶ 4    According to Fateen, beginning in 2018 he occupied the property with the consent of the former owner's heirs after they "abandoned" the property. However, he has not identified any lease or documentation giving him a right of possession. Fateen asserts that he made various improvements at the property over the next several years, and that he paid property taxes for subsequent years 2017 through 2022. Notably, the record indicates that Fateen did in fact pay taxes to the Cook County Treasurer, as an "agent" for Acora Winston. However, there is no evidence that Fateen had any ownership interest in the property.

¶ 5    In July 2019, the County Treasurer of Cook County sold the property at a Scavenger Tax Sale to CCLBA for $25,042.62, based on the delinquent taxes for years 2007 through 2016.

¶ 6    In November 2019, CCLBA caused a notice under section 22-5 of the Property Tax Code to be sent to the property advising that the property had been sold for delinquent taxes. 35 ILCS 200/22-5 (West 2024) (requiring notice to be given within 4 months and 15 days after a sale "to

the party in whose name the taxes are last assessed as shown by the most recent tax collector's warrant books"). That notice was addressed to Arcora Winston, indicating she was the party in whose name the taxes were last assessed. The notice directed that payment of $47,744.85 was due to redeem the property, and that the period of redemption would expire on January 27, 2022. In January 2022, CCLBA extended the redemption date to June 8, 2022.

¶ 7                                    February 2022 Petition for Tax Deed

¶ 8          On February 14, 2022, CCLBA filed a petition for tax deed. In that petition, it recited that the time for redemption would expire "by extension on June 8, 2022." The petition recited that all notices required by law would be given. See 35 ILCS 200/22-10 (West 2020) (requiring a tax purchaser to send a "Take Notice" stating the date of the expiration of the redemption period to "owners, occupants, and parties interested in the property, including any mortgagee of record" between three and six months before the expiration); *id*. § 22-25 (requiring tax purchaser to deliver such notice to the clerk of the circuit court to be served by certified mail).

¶ 9          The record reflects that in February 2022, CCLBA prepared a "Take Notice" form pursuant to section 22-10, advising that the period for redemption would expire on June 8, 2022. The "Take Notice" was directed to, *inter alia*, "Unknown Heirs and Legatees of Arcora Winston" and "Unknown Owners and Occupants" of the subject property. The "Take Notice" did not name Fateen. The record reflects such notices were mailed by the clerk of the circuit court to the subject property.

¶ 10         The record also reflects a process server, James Anderson, visited the property to attempt to serve notice upon the "Unknown Heirs and Legatees of Arcora Winston" on the afternoon of February 27, 2022. According to an affidavit by Anderson, he found it was vacant, stating "the utilities have been shut off at this residence, [and] the home appears abandoned."

¶ 11          Anderson also completed a "Vacancy Affidavit" from the same visit to the property. In it, he stated: "the home appears abandoned. * * * The Two Flat Red Brick Building w/garage in rear contains 2 units. Building is Boarded up and vacant, no utility[ies]." The affidavit indicated that the electric meter was not running.

¶ 12          The vacancy affidavit attached photographs from the property on February 27, 2022. The photographs show a front door that is mostly glass with a wood frame; white shades are drawn behind the front door, as well as the windows on the first floor. The photographs show second-story windows that appear to be dark. A photograph of the rear of the building shows a closed back door and windows that appear to be covered. Based on the photographs, nothing within the building (such as furniture) is visible from the outside.

¶ 13          Notice of the tax sale and redemption period was published in the Chicago Daily Law Bulletin on February 28, March 1, and March 2, 2022. See 35 ILCS 200/22-20 (West 2022) (requiring tax purchaser to publish notice of petition for tax deed).

¶ 14                           Order Directing Issuance of Tax Deed

¶ 15          The extended redemption period expired in June 2022. On July 19, 2022, CCLBA filed an application for an order directing the circuit clerk to issue a tax deed. CCBLA recited that it had given the statutorily required notices and attached supporting documents, including Anderson's vacancy affidavit. On July 25, 2022, the court conducted a hearing at which CCLBA's counsel represented that "all interested parties were identified and served."

¶ 16          On September 26, 2022, the trial court issued an order directing issuance of a tax deed. The tax deed was recorded with the county clerk in September 2023.

¶ 17              Fateen Challenges CCBLA's Right to Possess the Property

¶ 18    The record shows that in October 2023, Fateen emailed CCLBA about the property, identifying himself as an "occupant" and stating that for the past several years he had been "renovating and paying the taxes on this building." According to CCLBA, this was the first time it was aware that Fateen occupied the property.

¶ 19    On November 28, 2023, CCLBA filed a motion for order of possession, a copy of which was mailed to "Unknown Owners and Occupants" at the property. The record reflects that Fateen received that motion and contacted CCLBA via email. On December 6, 2023, CCBLA responded by email. It informed Fateen that "there is an active demo[lition] order on the building" which indicated that "the building is not safe to be inhabited, which means your occupancy is a safety and liability concern to CCLBA." CCLBA advised Fateen he could appear in court to present his arguments.

¶ 20    On December 8, 2023, Fateen first appeared in this matter and filed a *pro se* "Motion to Deny Order for Possession." In it, he stated that he "came to be a tenant of the prem[ises] in good faith based on Illinois Laws," citing "Public Act 097-0184 subsection (d) and (e)."[1] Fateen stated:

> "I am in no way affiliated with the legal owners of this property. I never claimed to be an owner of this property, only a tenant or resident. The legal owners of this property either are deceased or abandoned this property long before I came along. It was vacant and abandoned when I found it and subjected to a demolition order in case number 20141402257."

---

[1] Public Act 097-1084 amended section 21-3 of the Criminal Code regarding the offense of "Criminal trespass to real property." P.A. 94-0184, eff. July 22, 2011. Subsection (d) and (e) of that section exempts a person from prosecution or civil liability for that offense if he "beautifies unoccupied and abandoned" residential property. ILCS 720 ILCS 5/21-3(d)-(e) (West 2024).

¶ 21    Fateen stated he believed he had a "right to beautify the property" and that "[m]y continuous entering of the property for several months gave me tenants rights." Fateen asserted he had "paid several years taxes" totaling $18,609, made various repairs, and "paid an electrician to secure a permit and perform electrical work."

¶ 22    On December 11, 2023, Fateen filed a "Motion for Injunction" to prevent CCLBA from taking possession. He asserted that CCLBA "used deception" by failing to give all interested parties required notice under section 22-10 of the Property Tax Code. See 35 ILCS 200/22-10 (West 2022) (requiring notice of the expiration of the redemption period to be given to "owners, occupants and parties interested in the property"). Fateen claimed that he had not received notice of the tax deed action until he learned of CCLBA's motion for order of possession.

¶ 23    On December 12, 2023, Fateen filed a "Motion to Appeal to Set Aside Tax Deed" in which he again claimed CCLBA failed to provide notices under section 22-10. He claimed he had occupied the property "for over five years" but did not receive any prior notice. He claimed CCLBA obtained the tax deed "by way of fraud and deception."

¶ 24    On December 13, 2023, the trial court entered an order of possession in favor of CCLBA, but it stayed the order until April 9, 2024.

¶ 25                        Fateen's First Section 2-1401 Petition

¶ 26    On January 5, 2024, Fateen filed a "Section 2-1401 of the Code of Civil Procedure Appeal to set aside Tax Deed and Motion to Vacate Judgement" (first section 2-1401 petition). He claimed that CCLBA failed to serve the statutorily required notices, the tax deed was fraudulently acquired, and CCLBA "concealed this matter" from him until December 2023. He also claimed that CCLBA's agents "tampered with public documents by concealing the tax payments made on the property from 2016-2022 * * * while fraudulently registering the property as vacant."

¶ 27     On February 7, 2024, CCLBA filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 2/615 (West 2022)), urging that Fateen's section 2-1401 petition was facially defective. CCLBA argued that the petition was deficient because Fateen made conclusory allegations that were unsupported by the evidence. CCLBA maintained that it had complied with all statutory notice requirements and denied any fraud. CCLBA also argued that Fateen did not act with the requisite due diligence to support a section 2-1401 petition.

¶ 28     On April 9, 2024, the trial court held a hearing, although there is no transcript in the appellate record. On that date, it entered an order granting CCLBA's motion to dismiss the section 2-1401 petition "for the reason of lack of due diligence, and as such is legally insufficient." The court's order added: "Further, it is unlikely that Marwan Fateen had any standing to redeem." The same order stayed order of possession until October 8, 2024.

¶ 29                                 Second 2-1401 Petition

¶ 30     On July 16, 2024, Fateen filed a "Motion for Section 2-1401 of the Code of Civil Procedure Appeal to set aside tax Deed and Vacate Judgment Entered on September 26, 2022 Directing Issuance of Tax Deed" (second petition). The second petition recited the language of section 22-45 of the Property Tax Code, which provides specific grounds for a collateral attack on a tax deed. 35 ILCS 200/22-45 (West 2022). Fateen asserted that the September 26, 2022 tax deed should be vacated because, *inter alia*, CCLBA "committed fraud and deception to get the tax deed" and failed to send notices to all parties entitled to notice, "including occupants."

¶ 31     In the second petition, Fateen stated he was a "beneficial owner" of the property and had been in "full possession of the premises since October 2018" after the "previous owners abandoned" the premises. He claimed he paid over $18,000 for six years of taxes on the property.

¶ 32    Fateen asserted that CCLBA failed to send required notices to him. With respect to Anderson's vacancy affidavit, Fateen claimed that CCLBA sent Anderson to "commit perjury and fraud" and that his affidavit made false statements that utilities were shut off and that the building was boarded and vacant. He also claimed CCLBA "made numerous false statements via court filings or verbally to the judge during court proceedings."

¶ 33    Fateen suggested the attorneys for CCLBA "filed this frivolous case" based on a "nefarious motivation." He asserted the same attorneys represented CCLBA "in 2019 when Mustafa Saleh former asset manager of CCLBA was conducting a fraud scheme by stealing properties from CCLBA using straw buyers for his own economic gain."[2]

¶ 34    Fateen alleged that CCLBA "concealed this entire matter" from him until they obtained and recorded their tax deed in September 2023." He indicated he first learned of this matter when a notice was posted on the property on October 6, 2023.

¶ 35    Fateen claimed that, after the April 2024 order dismissing his first section 2-1401 petition, he reached out to CCLBA's counsel to "try to negotiate a settlement" but did not get a substantive response. He also stated he contacted Chicago Legal Aid and other organizations, but they "said they couldn't help" him.

¶ 36    On August 30, 2024, CCLBA filed a motion to dismiss the second section 2-1401 petition. CCLBA asserted that the dismissal of the first section 2-1401 petition was *res judicata* barring the second petition. CCLBA otherwise urged that the second 2-1401 petition failed to state a meritorious claim and was belied by evidence that it complied with all service requirements under the Property Tax Code. CCLBA again urged that Fateen did not act with sufficient due diligence.

---

[2] See https://www.justice.gov/usao-ndil/pr/former-cook-county-land-bank-authority-employee-sentenced-year-federal-prison-scheming

¶ 37    On September 16, 2024, Fateen filed an affidavit in support of the second 2-1401 petition. He averred he was a "beneficial owner" and had "full possession of the premises since October 2018." He stated the "previous owners abandoned" the property and that Acora Winston's family "allowed us to take over responsibilities for the property," and he had "invested tens of thousands of dollars" and "countless man hours of labor" into it.

¶ 38    Fateen claimed the matter had been "concealed" from him and that it was not until October 6, 2023, that CCLBA "finally made themselves known" by posting a notice on the front door.

¶ 39    Elsewhere, Fateen submitted records from the Cook County Treasurer showing property payments at the subject property for tax years 2017 through 2022. Those records list Acora Winston under "Tax Payer Name"; Fateen's name appears under "Agent Name."

¶ 40    In November 2024, Fateen recorded with the county clerk a "Claim of Lien" in which he asserted that he provided various repairs to the property, and that he paid property taxes for the years 2017 to 2022 totaling $18,5093.

¶ 41    The record reflects that the court conducted a hearing on December 12, 2024. However, there is no transcript in the record. On that date, the trial court entered an order granting CCLBA's motion to dismiss the second petition. It stayed the order of possession, pending Fateen's motion to reconsider.

¶ 42    Fateen filed his motion to reconsider on January 14, 2023. In support of that motion, Fateen submitted a March 2022 electric bill addressed to him at the subject property, as well as a copy of his drivers license, which listed the subject property as his address. CCLBA filed a response on March 4, 2025.

¶ 43    On April 8, 2024, the trial court held a hearing, although there is no transcript in the appellate record. On that date, the court entered an order denying Fateen's motion to reconsider

and specified that the order was final and appealable. Fateen filed a notice of appeal on May 1, 2025.

¶ 44                                    II. ANALYSIS

¶ 45        On appeal, Fateen challenges the dismissal of his petitions under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2022)) seeking to vacate the tax deed, as well as the denial of his motion to reconsider.

¶ 46        He contends that dismissal was error because he submitted proof by clear and convincing evidence that the tax deed was procured by fraud or deception within the meaning of section 22-45(3) of the Property Tax Code. 35 ILCS 200/22-45(3) (West 2024). He also asserts the tax deed was invalid pursuant to section 22-45(4) of the Property Tax Code because he was a person "holding a recorded ownership or other recorded interest in the property" and that CCLBA did not make a diligent inquiry to serve him with statutorily required notices. *Id*. § 22-45(4).

¶ 47        CCLBA primarily responds that dismissal was appropriate because (1) Fateen could not demonstrate the due diligence necessary for any section 2-1401 petition, and (2) that he otherwise lacked standing to bring a collateral attack on the tax deed. As to the merits, CCBLA contends that Fateen could not show that the tax deed was procured by fraud within the meaning of section 22-45(3). CCBLA also maintains that it complied with notice provisions, such that Fateen could not attack the tax deed pursuant to section 22-45(4) of the Property Tax Code.

¶ 48        For the following reasons, we conclude that Fateen lacked standing to assert a collateral attack on the underlying tax deed. This compels us to affirm the dismissal of his section 2-401 petitions.

¶ 49                           Relevant Statutory Provisions

¶ 50    Our analysis warrants review of pertinent statutory provisions regarding issuance of a tax deed, as well as the limited means to collaterally attack a tax deed.

¶ 51    Under the Property Tax Code, the county collector may offer property for public sale when a judgment has been rendered against that property for the nonpayment of real estate taxes. 35 ILCS 200/21-90 (West 2024). This court has explained:

> "The buyer of property at such a sale does not receive title to the property but, instead, receives a 'certificate of purchase." *Id*. § 21-250. The issuance of a certificate of purchase does not affect the delinquent property owner's legal or equitable title to the property. [Citations.] Before a redemption period expires, the property owner has the opportunity to redeem the property by paying the tax arrearage and costs. 35 ILCS 200/21-345 to 21-355 (West 2018)."
> *In re County Treasurer and ex officio County Collector of Cook County*, 2022 IL App (1st) 211511, ¶ 17.

¶ 52    Article 22 of the Property Tax Code "contains specific procedures for the issuance of a tax deed following the sale of property and the expiration of the redemption period." *Id*. ¶ 18. Under section 22-5, the tax purchaser must deliver a notice to the county clerk "to be given to the party in whose name the taxes are last assessed." 35 ILCS 200/22-5 (West 2022). Section 22-5 specifies the "Take Notice" language to be included in the notice, including that title and right to possession will transfer if redemption is not made by the redemption deadline. *Id*.

¶ 53    Section 22-10 of the Code requires a tax purchaser to send notice to "owners, occupants, and parties interested in the property, including any mortgagee of record" of the date of expiration of the period of redemption. 35 ILCS 200/22-10 (West 2020). Sections 22-15 and 22-20 call for

notice by publication in a newspaper. *Id*. §§ 22-15, 22-20. Section 22-25 requires the same notice to be served via certified mail by the clerk of the circuit court. *Id*. § 22-25 (West 2020).

¶ 54 "Before the tax purchaser is entitled to a tax deed * * * the redemption period must expire without any redemption by the property owner, and the tax purchaser must prove that he strictly complied with the requirements for certain statutory notices to the property owners, occupants, and parties interested in the property." *In re County Treasurer and ex officio County Collector of Cook County*, 2022 IL App (1st) 211511, ¶ 18.

¶ 55       Statutory Limits on Challenging a Tax Deed

¶ 56 This appeal stems from Fateen's challenges to the tax deed pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)). "Once the circuit court has issued a tax deed * * * it is incontestable except by direct appeal from the order directing the entry of the tax deed or by section 2-1401 petition." *In re County Collector*, 397 Ill. App. 3d 535, 542 (2009) (citing 35 ILCS 200/22-45 (West 2006)).

¶ 57 Section 2-1401 provides a means of obtaining "relief from final orders and judgments, after 30 days from the entry thereof." 735 ILCS 5/2-1401(a). "A petitioner is entitled to relief under section 2-1401 of the Code when he sets forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim to the trial court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, ¶ 9.

¶ 58 Notably, "the grounds for collaterally challenging the issuance of a tax deed are specifically limited by the legislature to the grounds listed in section 22-45 of the Tax Code." *DG Enterprises, LLC-Will Tax, LLC v. Cornelius*, 2015 IL 118975, ¶ 19. "Under section 22-45 of the Property Tax

Code, which works in conjunction with section 2-1401, there are four grounds upon which relief may be had from a tax deed via 2-1401 petition." *In re County Collector*, 397 Ill. App. 3d 535, 543 (2009) (citing 35 ILCS 200/22-45 (West 2006)). Section 22-45 of the Property Tax Code states:

> "Tax deeds issued under Section 22-40 are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief may be had under Sections 2-2103 or 2-1401 of the Code of Civil Procedure in the same manner and to the same extent as may be had under those Sections with respect to final orders and judgments in other proceedings. The grounds for relief under section 2-1401 shall be limited to:
>
> (1) Proof that the taxes were paid prior to sale;
>
> (2) Proof that the property was exempt from taxation;
>
> (3) Proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or
>
> (4) Proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22-20 through 22-30." 35 ILCS 200/22-45 (West 2024).

Here, Fateen's section 2-1401 petitions asserted challenges on the third and fourth grounds, section 22-45(3) and section 22-45(4).

¶ 59　　　The standard of review on dismissal of a section 2-1401 petition depends upon the nature of the challenge it presented. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Where a section 2-1401 petition presents a purely legal challenge, such as a claim that the prior judgment is void, the order on the petition is reviewed *de novo*. *Id.* ¶ 47.

¶ 60　　　However, "when a section 2-1401 petition presents a fact-dependent challenge to a final judgment," the petition "must set forth factual allegations supporting each of the following elements: (1) the existence of a meritorious defense;  (2) due diligence in presenting this defense; and (3) due diligence in filing the section 2-1401 petition for relief. [Citation.]" *Id*. ¶ 51. In this situation, "the circuit court's ultimate decision on the petition is reviewed for an abuse of discretion." *Id*.

¶ 61　　　We note that the trial court premised its April 2024 dismissal of Fateen's first section 2-1401 petition on the "lack of due diligence," while noting it was "unlikely" that Fateen had standing. The December 2024 order dismissing the second 2-1401 petition did not specify a reason. However, we are mindful that we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds. *US Bank, Nat. Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18.

¶ 62　　　Our review of the record and case law compels us to agree with CCLBA that Fateen lacked standing to bring a section 2-1401 petition challenging the tax deed. On this basis, we are compelled to affirm the challenged dismissal orders.

¶ 63　　　　　　　　Fateen Lacked Standing to Challenge the Tax Deed

¶ 64        "The doctrine of standing ensures that issues are raised only by those parties with a real interest in the outcome of the controversy. [Citation] To have the requisite standing to maintain an action, a plaintiff must complain of some injury in fact to a legally cognizable interest." *In re Application for Tax Deed*, 2018 IL App (5th) 170354, ¶ 41 (quoting *Schact v. Brown*, 2015 IL App (1st) 133035, ¶ 12). "[T]he issue of standing is a question of law" that is subject to *de novo* review. *In re County Treasurer*, 2013 IL App (3d) 120999, ¶ 16 (citing *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 35).

¶ 65        Insofar as section 22-45 of the Property Tax Code permits relief from a final judgment issuing a tax deed under section 2-1401 "in the same manner and to the same extent as may be had under [that] Section[] with respect to final orders and judgments in other proceedings," a party's standing to bring a section 2-1401 challenge to a tax deed "depends on whether they would have standing to bring a section 2-1401 petition generally." *In re Application for Tax Deed*, 2018 IL App (5th) 170354, ¶ 42.

¶ 66        "The general rule in Illinois is that a nonparty to a judgment has no standing to seek relief from that judgment by filing a section 2-1401 petition." *Id*. ¶ 48 (quoting *Hurlbert v. Brewer*, 386 Ill. App. 3d 1096, 1102) (2008)). "Specifically as to tax deed proceedings, to have standing to file a section 2-1401 petition to collaterally attack a tax deed, a petitioner must have a bona fide title or interest in the property." *In re County Treasurer*, 2013 IL App (3d) 120999, ¶ 18 (citing *In re Application of Hamilton County Treasurer*, 96 Ill. App. 3d 158, 162 (1981)). If a party has no interest in the subject property, it lacks standing to bring a section 2-1401 petition. See *In re Application for Tax Deed*, 2018 IL App (5th) 170354, ¶ 44 (because former owner of mineral rights had sold them via quitclaim deed, he "no longer had any interest in the property when he filed his section 2-1401 petition, [and] the principles of standing preclude him from bringing the

petition."); see also *In re Tax Deed*, 2020 IL App (5th) 190168, ¶ 35 (former owner of mineral rights lacked standing to bring a section 2-1401 petition attacking tax deed since she "did not have an interest in the property when she filed her section 2-1401 petition * * * because she had already quitclaimed her interest" before filing the petition.)

¶ 67    Elsewhere, this court has explained that a party's standing to bring a collateral attack on a tax deed is linked to its ability to redeem as the property owner or on an owner's behalf:

> "Any party that has such an interest in the property that he or she would have been entitled to redeem has the right to bring suit to set aside a tax sale and to have the tax deed declared void. *Miller v. Cook*, 135 Ill. 190, 203 (1890) (the right to bring a suit to set aside a tax sale and to have the deed declared void is not confined to the original owner of the land and may be exercised by his mortgagee or by any person who can show such an interest in the property as would have entitled him to redeem). A party may redeem on behalf of the owner even where the party lacks any interest in the property or lacks explicit authorization from the owner. *In re Application of the County Treasurer & ex officio County Collector*, 301 Ill. App. 3d 672, 679 (1998) (*Choice Properties*). The relationship between the party redeeming the property and the owner may be of such a nature that a valid redemption promotes both of their interests. *Id*."

> *In re County Treasurer,* 2013 IL App (3d) 120999, ¶ 18.

¶ 68    Thus, in *In re County Treasurer*, the Third District held that a title company had standing to file a section 2-1401 petition to collaterally attack a tax deed because, although it did not have

an ownership interest, "it clearly could have redeemed the taxes on the subject property on behalf of the owner." *Id.* ¶ 19.

¶ 69    In this case, nothing in the record suggests Fateen had an interest in the subject property that would give him standing to bring a section 2-1401 challenge to the tax deed. Specifically, there is no indication he ever had a right to redeem the delinquent taxes, either on his own behalf or on behalf of the prior owner. See 35 ILCS 200/21-345 (West 2022) (limiting the right to redeem property to "any owner or person interested in that property.")

¶ 70    As CCLBA points out, in Fateen's submissions he specifically disclaimed any ownership interest in the property. Rather, he indicated that he occupied the property with the consent of the family of the deceased former owner. We note there is no documentation evidencing such consent. And even assuming he had permission of the former owners' heirs to occupy the subject property, it would not give him standing under our case law, as it would not give him the right to redeem.

¶ 71    We recognize evidence in the record that Fateen paid property taxes in years during which he occupied the property. But he does not identify any authority (and we have found none) suggesting that this would give him standing to collaterally attack the tax deed, under section 22-45 of the Property Tax Code. We note that the question of whether he had right to redeem (and thus standing to assert a collateral attack) is different from whether he was an interested party entitled to receive notice of the tax deed proceedings. See *In re County Treasurer*, 2022 IL App (1st) 211511, ¶ 39 (explaining that a "party who has certain rights under the Code is an interested party entitled to notice, *even where those rights do not include the right to redeem*." (Emphasis added). In other words, even if Fateen should have been served with a section 22-10 notice given his status as an occupant, that is not equivalent to the right to redeem or, in turn, standing to assert a collateral attack on the tax deed.

¶ 72        We thus find that Fateen's section 2-1401 petitions were subject to dismissal due to his lack of standing. In turn, we need not address the parties' remaining contentions, including whether Fateen acted with due diligence, whether he could support claim of "fraud or deception" by CCLBA in connection with the issuance of the tax deed pursuant to section 22-45(3) of the Property Tax Code, 35 ILCS 200/22-45(3) (West 2022), or whether he could attack the tax deed under section 22-45(4) of the Property Tax Code. *Id*. ¶ 22-45(4). In any event, we note that it is apparent that he could not get relief under the latter provision, as it applies only to "a person or party *holding a recorded ownership or other recorded interest in the property*" that was not given proper notice. (Emphasis added). 35 ILCS 200/22-45(4) (West 2022). There is no evidence that Fateen had such an interest during the relevant time period. At most, it appears he was occupying the property with consent of the prior owner's heirs, without any formal lease.

¶ 73        We note that we have sympathy for Fateen, insofar as the record suggests that he occupied the property and paid taxes thereon and should have been identified as a party entitled to notice of the instant tax deed proceedings. See 35 ILCS 200/22-10 (West 2022) (requiring notice of the expiration of the redemption period to be given to "owners, occupants and parties interested in the property"). Fateen never identified any lease showing he had a right to occupy the premises. Nonetheless, Fateen was identified in tax payment records from the Cook County Treasurer from 2017 through 2022 as an "agent" for Arcora Winston. In turn, it appears that CCBLA should have been able to identify him as a party entitled to notice, if it acted with due diligence. See *In re County Treasurer and ex officio County Collector of Cook County*, 2022 IL 211511, ¶ 39 ("a tax purchaser has failed to act with minimal diligence if he has not made reasonable efforts to notify all persons whose interest may reasonably be inferred from the public records regarding the property's ownership.").

¶ 74        Although we do not suggest that CCLBA intended to deceive Fateen, it appears that he should have been identified by CCBLA as a party entitled to notice during the redemption period. Unfortunately for Fateen, even assuming he should have been given such notice as an occupant of the property, that would not give him standing to collaterally attack the tax deed under our case law.

¶ 75                              CONCLUSION

¶ 76        For the foregoing reasons, we affirm the dismissal of Fateen's section 2-1401 petitions and the denial of his corresponding motion to reconsider.

¶ 77        Affirmed.